UNITED STATES of America,
Plaintiff–Appellee,

v.

B & W INVESTMENT PROPERTIES
and Louis Wolf, Defendants–
Appellants.

No. 94–1892.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 7, 1994.

Decided Oct. 24, 1994.

As Amended on Denial of Rehearing
and Suggestion for Rehearing
En Banc Dec. 2, 1994.

---

**6.** Notes, Devitt, Blackmar and Wolff, *Federal Jury Practice and Instructions* at 336–38 (4th Ed.1987).

Brian R. Havey, Office of U.S. Atty., Civ. Div., Appellate Section, Chicago, IL, William B. Lazarus (argued), Albert M. Ferlo, Dept.

of Justice, Land & Natural Resources Div., Washington, DC, Linda A. Wawzenski, Asst. U.S. Atty., Chicago, IL, for plaintiff-appellee.

Robert A. Egan, Egan & Trapp, Chicago, IL (argued), for defendants-appellants.

Before CUMMINGS, BAUER and CUDAHY, Circuit Judges.

CUMMINGS, Circuit Judge.

This suit involves a civil action by the United States Environmental Protection Agency (the "EPA") against two defendants for violations of sections 112 and 114 of the Clean Air Act (the "Act"), 42 U.S.C. §§ 7412(c) and 7414, and the National Emissions Standards for Hazardous Air Pollutants for Asbestos (the asbestos "NESHAP"), 40 C.F.R. Part 61 subpart M.[1] The United States District Court for the Northern District of Illinois granted summary judgment for the EPA and imposed fines of $1,500,000 and $1,675,000, respectively, on defendants Louis Wolf and B & W Investment Properties, Inc.

Defendants argue on appeal that because the Environmental Protection Agency failed to provide notice before initiating the action, the trial court erred in imposing a statutory penalty; that the court improperly found B & W Investment Properties, Inc. liable; and that the fine was excessive and unsupported in its amount. For the reasons set forth below, the judgment of the district court is affirmed.

## STATUTORY BACKGROUND

The Clean Air Act sets forth regulations for the control of air quality, several of which are at issue here. Section 112 of the Act authorizes the EPA to establish national emission standards for any air pollutant deemed "hazardous," for which no ambient air quality standard is applicable.[2] Section 112(c) prohibits the construction or modification of existing sources that will emit hazardous air pollutants, and further prohibits emissions of such air pollutants which violate emission standards. Section 114 authorizes the EPA to establish reporting requirements to assist the agency in developing emission standards and monitoring compliance. The asbestos NESHAP, *inter alia*, requires written notification to the EPA before renovation that could result in emissions and establishes specific standards for the treatment of asbestos—primarily, for purposes of this case, that it be adequately wetted until collected for disposal, so that asbestos particles cannot become airborne.[3] 40 C.F.R. § 61.147. These regulations apply to all owners or operators, defined as "any person who owns, leases, operates, controls or supervises" a property in violation. 40 C.F.R. § 61.141. The Act and asbestos NESHAP impose strict liability on violators.

The EPA is authorized to pursue violations of sections 112 and 114 and the asbestos NESHAP under section 113 of the Act, 42 U.S.C. § 7413. This section sets forth federal enforcement procedures for the issuance of compliance orders and civil actions, and provides for civil penalties not to exceed $25,000 per day of violation.

## FACTS

Defendant Louis Wolf purchased the parcel in question, consisting of 5.5 acres and four vacant buildings in Cicero, Illinois, on December 7, 1989. Mr. Wolf made the $575,-

---

1. The Clean Air Act and the applicable regulations were amended in November 1990. Since the events at issue occurred prior to the amendment date, the district court applied pre-amendment law, with the exception that the court relied on the expanded post-amendment list of mitigating factors in determining the penalty. Mem.Op. at 6, n. 1 (Sept. 30, 1992); Mem.Op. at 8, 1994 WL 53781 (Feb. 17, 1994).

2. Asbestos was among the earliest air pollutants designated hazardous under the Act. 36 Fed. Reg. 5931.

3. Dry or friable asbestos poses a particular danger during construction or renovation activities because it can easily become airborne. The asbestos NESHAP defines friable asbestos as "material containing more than 1 percent asbestos by weight that hand pressure can crumble, pulverize, or reduce to powder when dry." 40 C.F.R. § 61.141.

000 deal at the behest of fellow real estate developer Albert Berland. In a somewhat Byzantine transaction, Mr. Berland retained a two-year option to purchase the land from Mr. Wolf at a higher rate, and a right of first refusal if Mr. Wolf received other offers. In the meantime, Mr. Wolf authorized Mr. Berland to show the property to potential buyers.

In May 1990, having failed to sell the property, Mr. Berland leased an undeveloped portion of the parcel to David Moss of C & M Parking to use as a storage lot. Mr. Berland signed the agreement with Mr. Moss as an agent for a corporate entity called B & W Investment Properties, Inc. ("B & W"). At the same time, unbeknown to Mr. Wolf, Mr. Berland entered into negotiations with Mr. Moss regarding the eventual sale of the entire parcel for $1,400,000, contingent on the removal of existing asbestos from the vacant buildings.

To facilitate the pending sale to Mr. Moss, Mr. Berland hired a contractor to remove the asbestos. Work began on August 10, 1990—unfortunately, without the requisite prior notice to the EPA. Further, the contractor apparently failed to adhere to the safety regulations set forth in the asbestos NESHAP, performing the removal in such a way that friable asbestos could enter the air. This danger was particularly serious because the parcel abutted a Chicago Transit Authority commuter rail stop.

In the meantime, unaware of the asbestos removal work at the site, Mr. Wolf had entered the hospital for treatment of a heart condition in late July or early August 1990. During this time B & W acted as his management company.

On August 27 and 31, following an anonymous tip regarding the renovation activity at the parcel, the EPA ordered a halt to the asbestos removal and sent investigators to the site. These investigators discovered large quantities of unwetted friable asbestos. The investigators also noted that the parcel was not safely secured, that individual buildings had open or broken windows and in one case a hole in the roof, and that no warning signs had been posted to alert individuals to the danger of asbestos exposure.

On August 30, 1990, the EPA issued an order—addressed to B & W Investment Properties but apparently received only by Mr. Berland—regarding asbestos cleanup at the parcel. The order required cessation of the cleanup until the EPA approved a plan for disposal of the previously disturbed asbestos, and required compliance with the Clean Air Act and asbestos NESHAP regarding any further activities. Some time later (the parties differ as to the exact date), Mr. Wolf learned of this order. After further delay, a contractor hired by Mr. Wolf as agent for B & W began EPA-approved cleanup on January 21, 1991; work was complete on March 13–15, 1991.

On September 16, 1991, the EPA filed suit for enforcement and penalties pursuant to 42 U.S.C. § 7413(b), alleging that the defendants had commenced asbestos removal without proper notification to the EPA, and that they had violated the Act and the asbestos NESHAP by failing to wet friable asbestos material adequately. On September 30, 1992, the district court granted summary judgment for the government. On February 17, 1994, following a hearing before the magistrate judge regarding penalties, the district court entered a judgment against Mr. Wolf and B & W. The decision assessed a joint and several fine of $1,675,000 against both defendants for the wetting violations. This sum represented the statutory maximum of $25,000 per day for 67 days, from November 15, 1990 until the approved cleanup began on January 21, 1991. The court reduced Mr. Wolf's liability for the joint and several fine of $1,675,000 to $1,500,000, based on his ability to pay, and imposed no fines on either Mr. Wolf or B & W for the notice violation.

## DISCUSSION

### I.

Defendants initially contend that the Act requires the EPA to give notice to a violator as a precondition to filing suit. Since neither Mr. Wolf nor B & W was ever properly served with notice (Mr. Berland received the sole written communication from the EPA, and the record is devoid of evidence that he

passed it along), defendants submit that the district court erred in granting summary judgment for plaintiff on the liability issue. We review de novo the statutory interpretation behind the district court's decision. *Erickson v. Trinity Theatre, Inc.,* 13 F.3d 1061, 1067 (7th Cir.1994).

## A.

■ In support of their notice argument, defendants rely on section 113(b)(2) of the Act, which states that the EPA may commence suit when any person "violates any requirement of an applicable implementation plan ... more than 30 days after having been notified by the Administrator under subsection (a)(1) of this section of a finding that such person is violating such requirement." 42 U.S.C. § 7413(b)(2). Numerous courts, defendants correctly note, have interpreted this language to incorporate a precondition of notice. *See United States v. General Motors Corp.,* 876 F.2d 1060, 1063 (1st Cir.1989), affirmed, 496 U.S. 530, 110 S.Ct. 2528, 110 L.Ed.2d 480; *United States v. Ford Motor Co.,* 736 F.Supp. 1539, 1547 (W.D.Mo. 1990); *United States v. Louisiana–Pacific Corp.,* 682 F.Supp. 1122, 1128 (D.Colo.1987) (all reading the notice of violation provision as mandatory).

However, as plaintiff has pointed out, the EPA did not rely on the enforcement provision of section 113(b)(2). In fact the EPA could not, because section 113(b)(2), which concerns violations of state implementation plans for ambient air quality standards, by its terms does not apply to regulation of hazardous air pollutants. There are no ambient air quality standards for hazardous air pollutants such as asbestos. 42 U.S.C. § 7412 (" 'hazardous air pollutant' means an air pollutant to which no ambient air quality standard is applicable"). Instead, asbestos, like the other hazardous air pollutants designated in section 112, is a federally regulated substance for which apparently no state implementation plan was involved. *Id.* Section 112(e)(1) of the Act authorizes the EPA Administrator to promulgate work practice standards for pollutants for which there are no feasible emission standards; the asbestos

NESHAP constitutes just such a response. *Id.*

Section 113(b)(3), which vests authority in the EPA to pursue violations of section 112(c), simply states that the EPA may issue compliance orders or commence civil actions "whenever" the agency finds a violation. 42 U.S.C. § 7413(b)(3). On its face, the Act imposes no duty on the EPA to provide notice of violations of section 112 before commencing an action for injunction or civil penalties. *See Dow Chemical Co. v. U.S. Environmental Protection Agency,* 635 F.Supp. 126, 130 (M.D.La.1986) (stating that "no preliminary notice is required for the enforcement of regulations dealing with hazardous air pollutants under 42 U.S.C. § 7412"); *see also United States v. Hugo Key and Son, Inc.,* 731 F.Supp. 1135 (D.R.I.1989) (setting forth the elements of a NESHAP violation simply as violation of applicable work-practice standards); *United States v. Tzavah Urban Renewal Corp.,* 696 F.Supp. 1013, 1021 (D.N.J.1988) (holding that in order to establish liability under the asbestos NESHAP, the government must prove "only ... (1) that defendants are owners or operators of a stationary source; (2) that asbestos-containing material was present in the facility being renovated, and (3) that specific requirements of the regulations have been violated." (citation omitted)).

## B.

The distinction between hazardous air pollutants and other air pollutants is reflected throughout the Act's treatment of federal enforcement procedures. Section 113(a), like section 113(b), distinguishes violations of state implementation plans from section 112 violations, and similarly incorporates an explicit notice requirement into the former but not into the latter. *Compare* 42 U.S.C. § 7413(a)(1) *with* 42 U.S.C. § 7413(a)(3).

Section 113(a) makes clear that the notice of violation requirement for state implementation plans serves a different function than simply alerting the violator. Section 113(a)(1) requires 30–day notification of both the violator and the state, allowing the state to act to enforce its own implementation plan before the EPA steps in. *See Baughman v. Bradford Coal Co., Inc.,* 592 F.2d 215 (3rd Cir.1979), certiorari denied, 441 U.S. 961, 99

S.Ct. 2406, 60 L.Ed.2d 1066 (state implementation plans are enforceable by either the state or the EPA). This is consistent with the overall goals of the Clean Air Act and its 1970 Amendments, which increased the federal government's role in air quality control while preserving the locus of primary responsibility within state and local governments. *See General Motors,* 876 F.2d 1060. In the case of hazardous air pollutant regulation, where there are no state implementation plans to enforce, there is less reason to defer action or to await the state's response.

### C.

■ Regardless of their lack of formal written notice, it is clear that defendants had actual notice of the violations well before the penalty period began. The EPA notified Mr. Berland, a close friend of Mr. Wolf's, on August 30, 1990, some two and a half months before any penalties ensued. Defendant admitted in his responses to interrogatories that he became aware of the problems at the parcel by late September or early October. The district court found that defendants knew of the asbestos violations by October 15 but nevertheless delayed the date at which penalties began accruing until November 15, 1990, giving the defendants a 30–day grace period to begin rectifying the situation. To the extent that defendants now make an equitable claim against the enforcement of the Act's penalty provisions, their awareness of the asbestos problem as of October renders that claim hollow.

### II.

■ B & W also disputes its characterization as an "owner or operator" strictly liable for violations of the Act. B & W raised this issue for the first time in a motion for reconsideration filed 27 days after the district court entered summary judgment against the corporation. This Court can review the denial of that motion only for clear abuse of discretion. *Industrial Associates, Inc. v. Goff Corp.,* 787 F.2d 268, 269, 270 (7th Cir. 1986).

The asbestos NESHAP extends liability beyond nominal owners of a property to all those who lease, operate, control, or super-vise it. 40 C.F.R. § 61.02. While the proceedings below demonstrate a great deal of confusion as to whether Mr. Wolf acted as B & W's agent, B & W as Mr. Wolf's agent, Mr. Berland as B & W's agent or B & W as an independent corporation performing management services for Mr. Wolf during the relevant time frame, there is no debate that B & W was authorized to and did exercise control over the parcel sufficient to bring the company within the scope of the "owner or operator" designation. B & W's name appears on the lease to Moss, on legal papers initiated against Moss in August 1990, and on the contract with the asbestos company that performed the cleanup after the EPA ordered compliance.

Clearly, the district judge was justified in concluding that B & W was an "owner or operator" within the terms of the asbestos NESHAP. Having been deemed an owner or operator, B & W has no valid challenge against application of the Act, regardless of how minimal the company's responsibilities or knowledge may actually have been. The Act imposes strict liability on all owners and operators of properties in violation of the Act. *See, e.g., United States v. Hugo Key and Son,* 731 F.Supp. 1135, 1137 (D.R.I. 1989); *United States v. Ben's Truck and Equipment, Inc.,* 17 Env'tl L.Rep. 20,777, 1986 WL 15402 (E.D.Cal.1986) ("the Act and the asbestos NESHAP provide strict liability for civil violations of their provisions.... Strict liability is essential to meet the purpose of the Act to protect and improve the quality of the nation's air."). Thus the judge did not abuse his discretion in imposing liability on B & W.

### III.

Defendants challenge the amount of the penalty imposed by the district court pursuant to the recommendations of Magistrate Judge Gottschall, arguing that the court (1) set an improper date for the period of penalty; (2) failed to mitigate the penalty amount; and (3) excessively punished defendants relative to the sentences imposed on other, similarly situated defendants in Clean Air Act cases. These contentions, which we review

only for abuse of discretion, merit little discussion. *U.S. Environmental Protection Agency v. Environmental Waste Control, Inc.,* 917 F.2d 327, 335 (7th Cir.1991), certiorari denied, 499 U.S. 975, 111 S.Ct. 1621, 113 L.Ed.2d 719 (assessment of a civil penalty "is committed to the informed discretion of the trial court.").

### A.

■ With respect to the penalty amount, defendants contend that the court below erred as to the date at which Wolf learned of the violations. The district court delayed imposition of the penalty until November 15, 30 days after the date it found that Mr. Wolf knew of the violations, reasoning that 30 days gave Mr. Wolf sufficient time to begin removing the asbestos. Mr. Wolf now argues that the penalty clock should not begin ticking until December 5, since he claims he did not know of the violations until November 5.

This argument fails to recognize that the Act does not require courts to toll the penalty period until violators possess actual knowledge. Technically, the Act imposes strict liability from the first day of the offense. The government asserted at oral argument that the assessment of civil penalties in the case of hazardous air pollutants requires no notice whatsoever to the violator. In the case of Mr. Wolf, who was incapacitated in the hospital with a heart ailment when the asbestos violations began, this assertion gives us serious pause: it would hardly seem fair to charge him $25,000 a day for events totally outside his knowledge. But the magistrate judge used her informed discretion (a) to determine that Mr. Wolf had actual knowledge of the asbestos problems by October 15, a finding amply supported by the evidence, and (b) to toll the penalty period for an additional 30 days to allow cleanup to commence. While we feel that the Clean Air Act's penalty provisions must out of fundamental fairness contain an implied requirement of reasonableness, the court acted well within its discretion in starting the penalty period on November 15.

### B.

■ Defendants further contend that the lower court misapplied the penalty criteria set forth in section 113(e) of the Act, which authorizes consideration of:

> (in addition to such other factors as justice may require) the size of the business, the economic impact of the penalty on the business, the violator's full compliance history and good faith efforts to comply, the duration of the violation as established by any credible evidence ... payment by the violator of penalties previously assessed for the same violation, the economic benefit of noncompliance, and the seriousness of the violation.

42 U.S.C. § 7413(e).

The district court held that none of these factors mandated a reduction in the size of the penalty. Defendants dispute the district court's application of the mitigating factors point by point, but their efforts are unavailing. In considering fines under the Act, courts generally presume that the maximum penalty should be imposed. *United States v. Midwest Suspension and Brake,* 824 F.Supp. 713, 735 (E.D.Mich.1993). The Act does not prescribe with precision how or with what weight to apply the mitigating factors, and the district court did not abuse its discretion in deciding that the seriousness of the violation, which one EPA investigator called "probably the single most contaminated site I have seen," its duration, and the delay before remediation, merited imposition of the statutory maximum.

### C.

Defendants also complain that compared to fines imposed on other Clean Air Act defendants, the joint and several penalty of $1,675,000 (for which Mr. Wolf's liability was reduced to $1,500,000) issued in this case is excessive. Comparisons with other cases, many of which resulted in plea agreements or did not involve asbestos, do not illuminate the treatment that should be accorded these defendants. There is ample evidence in the record to support the fine imposed by the lower court.

### IV.

Finally, defendants contend that the magistrate judge erred in excluding from evidence an EPA internal memorandum which, they argue, bolsters their contention that the parcel was in better and safer condition than the EPA admitted. Defendants seek on appeal to characterize this document as an admission against interest. The magistrate judge, accepting testimony that the author of the memorandum viewed it as a hypothetical exercise regarding a fictitious piece of property, excluded the memorandum on relevance grounds. Her decision is reviewable only for abuse of discretion. *Taylor v. National R.R. Passenger Corp.*, 920 F.2d 1372, 1375 (7th Cir.1990). Counsel for defendants failed to explain how a memorandum by someone completely in the dark about the circumstances in this case could assist in factfinding. The EPA memorandum was properly excluded.

Judgment affirmed.