In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-4008

SIERRA CLUB,

*Plaintiff-Appellee,*

*v.*

KHANJEE HOLDING (US) INCORPORATED,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 4:05-cv-04095— **J. Phil Gilbert**, *Judge.*

ARGUED DECEMBER 14, 2010—DECIDED AUGUST 24, 2011

Before BAUER, RIPPLE, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* This matter comes to us as a successive appeal. The original defendants wanted to build a power plant in southern Illinois. In the first appeal, we concluded that the defendants' Prevention of Significant Deterioration ("PSD") permit, which they needed in order to build the power plant, *see* 42 U.S.C. § 7475(a), had expired. We therefore held that it was

proper for the district court to grant summary judgment in favor of plaintiff Sierra Club and to enjoin the defendants from engaging in further construction activities until they obtained a new permit.

After our ruling, the district court assessed a penalty of $100,000 on all of the defendants, jointly and severally, and awarded attorneys' fees to Sierra Club. Defendant Khanjee Holding appeals that decision.

In this appeal, Khanjee contends that the district court lacked subject matter jurisdiction. But we already determined in the previous appeal that the district court had subject matter jurisdiction, and there is no reason to revisit that ruling.

Khanjee also argues that the district court assessed penalties and fees in violation of Khanjee's constitutional rights. We find, however, that Khanjee waived its constitutional arguments by not raising them before the district court.

Lastly, Khanjee contends that the district court committed error when it weighed the requisite statutory factors. But we conclude that the district court did not abuse its discretion. The court considered all of the relevant statutory factors and did not make any clearly erroneous findings of fact in assessing a penalty and awarding fees. We affirm.

## I. BACKGROUND

Franklin County Power ("FCP"), EnviroPower[1], and Khanjee are experienced developers of electric power plants in the United States and in other countries, having successfully built about a dozen plants currently in operation. All three participated in the first appeal, but only Khanjee is a party to this appeal.

In 2000, FCP applied to the Illinois Environmental Protection Agency ("Illinois EPA") for a PSD permit in order to build a coal power plant in southern Illinois. In 2001, the Illinois EPA issued the permit, which would become invalid if construction was not commenced within 18 months after receipt of approval, was discontinued for a period of 18 months or more, or was not commenced within a reasonable time.

In mid-2002, Khanjee began to serve as the lead developer for the project. Excavation on the site began in early 2003, but was abandoned shortly after due to an unrelated dispute. In March 2003, Khanjee and EnviroPower entered into a Development and Purchase Agreement, and in August of that year, Khanjee issued an offering memorandum seeking financial support for the project.

In the meantime, FCP's landlord had the site refilled because FCP did not make a payment on its lease. In

---

[1] FCP is a wholly owned subsidiary of EnviroPower. The two entities share the same chief executive officer, Mr. Frank Rotondi.

September 2004, an investigator from the Illinois EPA visited the site and found that construction had commenced, but on November 19, 2004, the Illinois EPA notified FCP that it had "made a preliminary finding" that the PSD permit had expired.

On May 20, 2005, Sierra Club filed suit, alleging that the defendants' PSD permit had expired. Khanjee filed a motion to dismiss arguing that it was not a real party in interest in the lawsuit because it was not a party to the permit at issue and was a separate corporate entity from FCP and EnviroPower. The district court found that Sierra Club had alleged enough to state a claim against Khanjee, and added, "Whether the allegations of the underlying Clean Air Act violation prove true and whether the corporate relationship between Khanjee and the other defendants is sufficient to warrant imposing liability on Khanjee are matters to be determined later in the case."

Sierra Club filed a motion for summary judgment against all defendants and requested an injunction to prevent construction of the plant until the defendants obtained a new PSD permit. The defendants, including Khanjee, filed a joint response and countered with their own motion for summary judgment. The defendants also filed a second motion to dismiss arguing that Sierra Club lacked standing to sue. Khanjee did not renew the arguments it made in its first motion to dismiss in any of these filings.

The district court granted Sierra Club's motion for summary judgment and enjoined further construction of

the power plant. The court also denied the defendants' motions. The defendants appealed, and the court stayed the case pending resolution of the appeal.

In *Sierra Club v. Franklin County Power of Illinois, LLC*, 546 F.3d 918 (7th Cir. 2008), (hereafter "*Sierra Club I*"), we found that Sierra Club had standing to sue, and that the defendants had not commenced construction of the plant within 18 months, causing their PSD permit to expire. We affirmed the district court's grant of summary judgment and of an injunction in favor of Sierra Club.

Back before the district court, Sierra Club moved for penalties and attorneys' fees. The court imposed a civil penalty of $100,000 on all defendants, jointly and severally, under 42 U.S.C. § 7604(a). The penalty was to be paid to various local chapters of the non-profit organization Habitat for Humanity. The court also awarded Sierra Club $375,985.70 in attorneys' fees and costs. Khanjee appeals the imposition of penalties and fees.

## II.  ANALYSIS

### A. Subject Matter Jurisdiction

Khanjee argues that the district court lacked subject matter jurisdiction to impose civil penalties under § 7604(a), relying on *CleanCOALition v. TXU Power*, 536 F.3d 469, 479 (5th Cir. 2008), which held that § 7604(a)(3) "does not authorize preconstruction citizen suits against facilities that have either obtained a permit or are in the process of doing so." Khanjee contends that § 7604(a)(3) "cannot be read to penalize intent [to construct a

power plant] when the relevant parties actually have a permit."

We already decided the jurisdictional question in *Sierra Club I*. We held that the district court had jurisdiction because Sierra Club had alleged that the defendants (including Khanjee) were "in violation of [a] condition of a [PSD] permit" and § 7604(a)(3) expressly permits lawsuits against "any person . . . who is alleged . . . to be in violation of any condition of a [PSD] permit." *Sierra Club I*, 546 F.3d at 928. Moreover, we explained that, "even if having an expired permit were akin to having no permit at all, Sierra Club would still be able to sue under section 7604(a)(3), which enables citizens to sue entities . . . that 'propose to construct . . . new or modified major emitting facilit[ies] without a [PSD] permit.'"[2] *Id.* at 929.

Matters decided on appeal become the law of a case to be followed on a second appeal, unless there is plain error of law in the original decision. *Creek v. Vill. of Westhaven*, 144 F.3d 441, 446 (7th Cir. 1998). Khanjee admits that we already decided the jurisdictional question in *Sierra Club I*, but insists, citing *Christianson v. Colt Industries Operating Corp.*, 798 F.2d 1051 (7th Cir. 1986), that our duty to determine subject matter jurisdiction is not constrained by the law of the case.

---

[2] We also found that Sierra Club could seek an injunction: "[W]e agree that 'a plain reading of the statute' implies 'that the [injunctive remedies provision] applies to actions under [section 7604](a)(3).'" *Id.* at 935.

In *Christianson*, we explained that "there [was] authority for the proposition that the issue of subject matter jurisdiction is not constrained by law of the case principles," citing the District of Columbia Circuit and the Fifth Circuit. 798 F.2d at 1056 (citing *Potomac Passengers Ass'n v. Chesapeake C & O Ry. Co.*, 520 F.2d 91, 95 (D.C. Cir. 1975); *Harcon Barge Co. Inc. v. D & G Boat Rentals, Inc.*, 746 F.2d 278, 283 n.2 (5th Cir. 1984)). Since that decision, both the District of Columbia Circuit and Fifth Circuit have held that the law of the case does apply to subject matter jurisdiction. *See Free v. Abbott Labs., Inc.*, 164 F.3d 270, 272-73 (5th Cir. 1999) (joining other circuits in refusing to recognize a jurisdictional exception to the law of the case doctrine and explaining that although a federal court must examine each case to determine the basis for subject matter jurisdiction, "perpetual re-examination of precisely the same issue of subject matter jurisdiction" is not required); *LaShawn A. v. Barry*, 87 F.3d 1389, 1394 (D.C. Cir. 1996) (en banc) ("[T]his court and other courts of appeals routinely apply law-of-the-case preclusion to questions of jurisdiction . . . and do so even when the first decision regarding jurisdiction is less than explicit.").

Moreover, in *Christianson*, we simply relied upon the established rule that the law of the case does not bar reconsideration and reversal of "even nonjurisdictional rulings that are manifestly incorrect." 798 F.3d at 1057. Because we found that our previous jurisdictional ruling was "clearly wrong," we revised that ruling. Subsequently, in *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 816 n.5 (1988), in deciding the related question of whether the law of the case (or law of the circuit) doctrine

applied when a case was transferred from a coordinate court, the Supreme Court, answering that question affirmatively, noted that "perpetual litigation of any issue—jurisdictional or nonjurisdictional—delays and therefore threatens to deny, justice." That principle applies with significant force here, since the parties already vigorously litigated the question of jurisdiction in their previous appeal. And while Khanjee is correct that in *Shakman v. Dunne*, 829 F.2d 1387, 1393 (7th Cir. 1987), we stated that "courts are significantly less constrained by the law of the case doctrine with respect to jurisdictional questions," we re-examined our jurisdiction in that case because "we [were] confronted with a significantly different legal landscape than the one that confronted the district court at the time the complaint was originally filed . . . ."

Here, there are no "significant differences" in the legal landscape that warrant re-examination of our jurisdictional ruling in *Sierra Club I. CleanCOALition,* cited by Khanjee, is distinguishable. In that case, the plaintiffs had challenged the defendants' PSD permit application. *CleanCOALition*, 536 F.3d at 470-71. By the time the Fifth Circuit issued its decision, the defendants had "not only applied for a permit, but [had] since successfully obtained one, though still subject to state judicial review." *Id.* at 479. The court held that § 7604(a)(3) did not authorize suits against facilities with permits or against facilities that were "in the process of [obtaining a permit]." *CleanCOALition* did not address whether § 7604(a)(3) authorizes citizen suits against defendants who propose to construct a facility with an expired permit or who

violate the terms of a permit by failing to timely commence construction, causing the permit to expire, as was the case here. Therefore, we see no reason to disturb our holding in *Sierra Club I* that subject matter jurisdiction is present. *See also In re Memorial Estates, Inc.*, 950 F.2d 1364, 1367 (7th Cir. 1991) (applying law of the case to subject matter jurisdiction determination).

## B.  Constitutional Violation Claims

Khanjee contends that the district court's imposition of civil penalties violates the separation of powers doctrine, the Appointments Clause, and the Excessive Fines Clause of the Eighth Amendment. But Khanjee did not develop its separation of powers or Appointments Clause arguments before the district court,[3] and it has therefore

---

[3] The defendants briefly noted in their response to Sierra Club's motion for fees that the imposition of fines allegedly requires constitutional scrutiny, citing to Justice Kennedy's concurrence in *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 197 (2000) (Kennedy, J., concurring). But Justice Kennedy's concurrence in *Laidlaw* merely stated that neither the litigants nor the court of appeals had considered whether "exactions of public fines by private litigants, and the delegation of Executive power which might be inferable from the authorization, are permissible in view of the responsibilities committed to the Executive by Article II of the Constitution of the United States." *Id.* As a result, Justice Kennedy believed that "these matters [were] best reserved for

(continued...)

waived them. *Taubenfeld v. Aon Corp*, 415 F.3d 597, 599 (7th Cir. 2005).

Only Khanjee's Excessive Fines argument warrants additional discussion. Khanjee admits in its reply that "this is the first time Khanjee has cited the Excessive Fines Clause," but states that there "was no clear indication that the Clause would be relevant until the district court issued its decision." There is authority for the proposition that an Excessive Fines challenge is not ripe "until the imposition, or immediately impending imposition, of a challenged punishment or fine." *See Cheffer v. Reno*, 55 F.3d 1517, 1523-24 (11th Cir. 1995). However, we are still unpersuaded by Khanjee's contention that it could not have presented its Excessive Fines challenge to the district court. As Khanjee admits later in its reply, its argument is that "a fine of any size [against Khanjee] is excessive." Khanjee could have, but did not, make that argument to the district court, in response to Sierra Club's motion for civil penalties. At that time, the imposition of the penalty was "immediately impending," and Khanjee's claim was ripe.

---

[3] (...continued)
a later case." *Id.* Here, Khanjee also failed to develop its constitutional arguments before the district court and therefore waived them. *See Kunz v. DeFelice*, 538 F.3d 667, 681 (7th Cir. 2008) (failure to adequately present an issue to the district court waives the issue on appeal).

### C. Penalties and Fees

Khanjee contends that its relationship to the other defendants in the first appeal, FCP and EnviroPower, is too tenuous to warrant imposing penalties and fees on Khanjee. But Khanjee did not renew this argument on summary judgment after the district court rejected it in denying Khanjee's motion to dismiss. And we already affirmed the district court's grant of summary judgment against all of the defendants in *Sierra Club I*. *See Creek*, 144 F.3d at 446 (7th Cir. 1998) (matters decided on appeal become the law of the case to be followed on a second appeal unless the prior decision is plainly erroneous).

In any event, even if we were to consider Khanjee's contention, it would fail. The citizen suit provision of the Clean Air Act allows any person to bring an action "against any person who proposes to construct or constructs any new or modified major emitting facility without a permit." § 7604(a)(3). Khanjee argues that liability can only be imposed on owners or operators. *See United Steelworkers of Am. v. Or. Steel Mills, Inc.*, 322 F.3d 1222, 1229 n.4 (10th Cir. 2003) ("While the citizen suit provision does not use the words 'owner or operator,' the Clean Air Act has been interpreted to impose 'strict liability upon owners and operators' of polluting facilities that violate the Act.") (citing *United States v. B & W Inv. Props.*, 38 F.3d 362, 367 (7th Cir. 1994) (discussing asbestos National Emission Standards for Hazardous Air Pollutants, which "extends liability beyond nominal owners of a property to all those who lease, operate, control, or supervise" a stationary source)). Sierra Club,

however, contends that § 7604(a)(3) is not restricted to owners or operators.

We need not resolve the dispute. As the district court found, the evidence reflects that Khanjee effectively controlled and led the efforts to build the power plant after the PSD permit expired in early 2003. Khanjee began to serve as the lead developer for the plant's construction in mid 2002. And in March 2003, Khanjee entered into a Development and Purchase Agreement with EnviroPower, which provided that, "In consideration of receiving the Development Funding . . . [EnviroPower] agrees to *cede control over Development of the Projects . . . to* [Khanjee]." (emphasis added). The agreement further provided for the creation of a Management Committee of three members nominated by Khanjee, which was "responsible for . . . assignment and management of manpower resources, contract negotiations and execution, funding procedures, budget compliance, status reports, schedule compliance and development, [and] implementation and adherence to the Financing Plan." This agreement, which gave Khanjee control over the development of the plant, belies Khanjee's claim that it was a mere financier. The district court also concluded, and we agree, that Khanjee and the other defendants, who are all sophisticated parties, had an intimate working relationship. Khanjee therefore exercised enough control over the project such that it can be held liable as an "owner or operator," even if that were the test, along with the other defendants. *See B & W Inv. Props.*, 38 F.3d at 367 (finding that because defendant's name appeared on a

lease and on several legal papers, there was "no debate" that defendant exercised control over the parcel at issue sufficient to bring it within the scope of the "owner or operator" designation).

### 1. Penalties

The Clean Air Act authorizes suits against entities who construct or propose to construct facilities without a permit. *See* § 7604(a)(3). When a party prevails under § 7604(a)(3), as Sierra Club did here, the district court is authorized in its discretion to "apply any appropriate civil penalty."[4] *See* § 7604(a) ("The district courts shall have jurisdiction . . . to apply any appropriate civil penalties (except for actions under paragraph (2) [brought against the Administrator])"). The penalty can be a fine for each day defendants violate the Clean Air Act to be deposited in the United States Treasury. § 7413(e). Alternatively, the district court may order a civil penalty of up to $100,000 to be used for beneficial mitigation projects that enhance the public health or environment and are consistent with the Clean Air Act. § 7604(g)(2).

In determining the amount of a civil penalty, the district court should consider, in addition to such other factors as justice may require, the size of the violator's business, the economic impact of the penalty on the

---

[4] We note that Khanjee and the other defendants argued in their previous appeal that a civil penalty was the only proper remedy in this case. *See Sierra Club I,* 546 F.3d 935-36. We confirmed that indeed a civil penalty was an appropriate remedy. *Id.*

business, the violator's full compliance history and good faith efforts to comply, the duration of the violation as established by any credible evidence, payment by the violator of penalties previously assessed for the same violation, the economic benefit of noncompliance, and the seriousness of the violation. § 7413(e)(1). The district court's weighing of the statutory factors is reviewed for abuse of discretion. *B & W Inv. Props.*, 38 F.3d at 367-68. Its findings of fact in support of a penalty are reviewed for clear error. *Pound v. Airosol Company, Inc.*, 498 F.3d 1089, 1094 (10th Cir. 2007).

Courts generally presume that the maximum penalty under the Clean Air Act should be imposed, and then consider the factors described in § 7413(e) to determine what degree of mitigation, if any, is proper. *B & W Inv. Props.*, 38 F.3d at 368; *Pound*, 498 F.3d at 1095. The district court concluded that the maximum penalty it could award was $41,712,500 for the defendants' continued attempts to build the power plant after the PSD permit expired,[5] but imposed a $100,000 penalty under § 7604(g)(2) after considering the statutory factors. Specifically, the court took into account that the defendants did not profit from the violation and that the defendants had no history of Clean Air Act violations. Khanjee did not provide the court with evidence of the size of its business, of its environmental record, or of the

---

[5] Khanjee did not challenge this calculation before the district court in response to Sierra Club's motion seeking penalties. *See Kunz*, 538 F.3d at 681 (failure to raise an issue to the district court waives the issue on appeal).

potential economic impact of the proposed penalty. However, the court noted that all of the defendants "must be of some financial heft." The court also explained that it was not absolutely clear that the defendants would not violate the Clean Air Act in the future, and that a modest penalty was necessary to forestall future violations.

Khanjee finds fault with the district court's analysis because, Khanjee argues, the court erroneously concluded that Khanjee acted with bad faith and relied on that conclusion in imposing a penalty. We agree with Khanjee that in *Sierra Club I* we rejected Sierra Club's contention that the defendants engaged in "willful misconduct" by persisting in their proposal to build the plant because the defendants were "simply defending the validity of [their] permit in court." 546 F.3d 918, 935-36. But we disagree that the district court disregarded our findings. Rather, as it was required to do under § 7413(e)(1), the court considered as one of many factors whether the defendants made "good faith efforts to comply [with the Clean Air Act]." The court found that they did not, stating that the defendants had continued their efforts to construct the power plant even after recognizing that their permit would expire. The court's conclusion is not clearly erroneous. The record does not otherwise reveal that Khanjee made any good faith efforts to comply with the Clean Air Act once the permit expired.

Regardless, the Clean Air Act imposes strict liability from the first day of the offense. *See B & W Inv. Props.*, 38 F.3d at 364. We have, however, expressed discomfort

with the idea that a penalty may be imposed where a defendant is unaware of a violation. *See id.* at 368 (explaining that it would seem unfair to charge a defendant the maximum penalty permissible per day "for events totally outside his knowledge," because the Clean Air Act's penalty provisions must out of fundamental fairness contain an implied requirement of reasonableness, but finding that the defendant had knowledge of the circumstances surrounding the violation).

In this case, we are not confronted with a defendant who lacked knowledge of the circumstances surrounding the violation. The district court found that the evidence reflected an "intimate working relationship between the defendants . . . regarding the construction of the Plant," and that, "[i]t is inconceivable in light of this evidence that Khanjee was not aware of the PSD Permit's expiration in early 2003." As previously noted, the evidence reflects that Khanjee exercised significant control over the project. The court's finding that Khanjee was aware of what was happening with the PSD permit is not clearly erroneous.

The district court considered all of the requisite factors under § 7413(e)(1). In light of the size of the project ($600 million) and of the potential maximum penalty of $ 41.7 million, we agree with the district court that a relatively small penalty of $100,000, imposed jointly and severally on all three defendants, was reasonable.[6]

---

[6] *United States v. Cinergy Corp.*, 623 F.3d 455, 456 (7th Cir. 2010), which held that the Clean Air Act does not authorize

(continued...)

### 2. Fees

The district court has discretion to award costs of litigation, including reasonable attorneys' fees, whenever appropriate in a Clean Air Act case. § 7604(d). An award is appropriate if the party seeking fees obtained some success on the merits. *See Ruckelshaus v. Sierra Club*, 463 U.S. 680, 688 (1983). The court found, and we agree, that Sierra Club prevailed and performed a public service by forcing the defendants to stop construction of their power plant until they have a PSD permit.

Khanjee contends that Sierra Club should not get its fees because, it argues, fees should not be awarded to well-funded parties that would bring cases regardless of an award. But there is no support for this proposition in the case law. "[Congress], when it called for citizen-suits [to aid enforcement of the Clean Air Act], considered a fee recovery to be consonant with the public interest." *Metro. Washington Coal. for Clean Air v. District of Columbia*, 639 F.2d 802, 804 (D.C. Cir. 1981). The attorneys' fees provision allows fees to be awarded to "any party" because Congress wanted to encourage meritorious litigation while discouraging frivolous suits. *See Natural Res. Def. Council, Inc. v. E.P.A.*, 484 F.2d 1331, 1338 n.7 (1st Cir. 1973). And "Congress recognized that public

---

[6] (...continued)

sanctions for conduct that complies with a State Implementation Plan and that the Environmental Protection Agency has approved does not help Khanjee because Khanjee's conduct here did not comply with the Clean Air Act.

interest organizations would conduct a great deal of litigation under the [Clean Air Act]." *Id.* As we explained, the district court did not abuse its discretion in concluding that Sierra Club was successful on the merits and performed a public service consistent with the Clean Air Act's goals. An award of fees was therefore proper.

*Western States Petroleum Ass'n v. E.P.A.*, 87 F.3d 280 (9th Cir. 1996), cited by Khanjee, is distinguishable. In that case, the Ninth Circuit described the party that was denied fees as "a financially able, nongovernmental party having no more than its own economic interests at stake." *Id.* at 286. The court also found that the litigation had not served the public interest. *Id.* Here, Sierra Club did not receive any direct financial benefit from the lawsuit, and it served the public interest. Increased charitable donations are collateral benefits not contemplated by *Western States*. That Sierra Club may be a well-funded organization does not preclude an award of fees. There is nothing in the Clean Air Act that suggests that fees can only be awarded to indigent parties.

## III. CONCLUSION

The judgment of the district court is AFFIRMED.