**UNITED STATES of America EX REL. Jacqueline PRICE, Relator,**

v.

**Shirley PETERS, Defendant.**

12–3107

United States District Court, C.D. Illinois, Springfield Division.

Signed December 18, 2013

Hilary W. Frooman, US Atty, Springfield, IL, for Relator.

Stephen F. Hedinger, Sorling Northrup, Springfield, IL, for Defendant.

### OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

This cause is before the Court on Relator/Plaintiff Jacqueline Price's ("Relator") Motion for Summary Judgment (d/e 22) and Defendant Shirley Peters's Cross-Motion for Summary Judgment (d/e 35). This is a qui tam action brought by Relator on behalf of the United States pursuant to the False Claims Act, 31 U.S.C. § 3729 *et seq.* The Court DENIES Defendant's Cross–Motion for Summary Judgment and GRANTS Relator's Motion for Summary Judgment. Defendant knowingly collected excess rent from Relator totaling $2,480. By knowingly collecting excess rent, Defendant violated the terms of the Housing Assistance Payments Contract duly executed by Relator and the Springfield Housing Authority pursuant to the Springfield Housing Authority's Section 8 Housing Choice Voucher Program (the "Voucher Program"). This conduct warrants imposing liability on Defendant under the False Claims Act.

### I. *JURISDICTION AND VENUE*

This Court has jurisdiction over claims brought pursuant to the False Claims Act. *See* 28 U.S.C. §§ 1331, 1345; *see also* 31 U.S.C. § 3732(a).

Venue is proper in the Central District of Illinois, Springfield Division, because Defendant resides in this judicial district and division. 28 U.S.C. § 1391(b). Venue is also proper pursuant to 31 U.S.C. § 3732(a) because Defendant resided, transacted business, and committed the alleged acts at issue in this judicial district and division.

### II. *LEGAL STANDARD*

Summary judgment is proper if the movant shows that no genuine dispute exists as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). The movant bears the initial responsibility of informing the court of the basis for the motion and identifying the evidence the movant believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v.*

*Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). No genuine issue of material fact exists if a reasonable jury could not find in favor of the nonmoving party. *Brewer v. Bd. of Trs. of the Univ. of Ill.,* 479 F.3d 908, 915 (7th Cir.2007). When ruling on a motion for summary judgment, the court must consider the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in the nonmoving party's favor. *Woodruff v. Mason,* 542 F.3d 545, 550 (7th Cir.2008).

## III. BACKGROUND

Pursuant to Section 8 of the United States Housing Act of 1937, as amended, the United States Department of Housing and Urban Development ("the Department") distributes federal funds for the Section 8 Voucher Program. *See* 42 U.S.C. § 1437f(*o* ); 24 C.F.R. Part 982. To assist eligible low income families with obtaining decent, safe, and sanitary housing in the private rental market, the Section 8 Voucher Program provides rental subsidies for dwellings that are chosen by tenants in the private market. The amounts paid by the Voucher Program to a landlord are defined as Housing Assistance Payments.

The Section 8 Voucher Program is administered locally by public housing agencies. The public housing agencies are operated with funds previously allocated through annual contribution contracts by the Department. The Springfield Housing Authority was the area's public housing agency at all times relevant to Relator's claims.

Before making Housing Assistance Payments, the local public housing agency enters into a Housing Assistance Payments Contract with the landlord. The Contracts are executed on forms specified by the Department. Among other things, the Contracts set the amount of monthly rent a landlord is entitled to receive for lease of the dwelling unit. The Voucher Program Housing Assistance Payments and any payments made by a tenant make up the monthly rent amount.

### A. Defendant and the Springfield Housing Authority Executed a Contract for the Housing Authority to Make Assistance Payments to Defendant on Relator's Behalf

In May 2008, Relator, a Section 8 tenant, located a two-bedroom residence to house Relator and her family. The dwelling unit, owned by Defendant, was located at 949 Indiana, Springfield, Illinois 62702. At the time, Defendant owned and leased a total of seven properties all with washers, dryers, and storage sheds. Often times, the storage sheds were detached garages. Defendant rents her properties to Section 8 and non-Section 8 tenants.

On May 21, 2008, Defendant and Relator executed a Request for Tenancy Approval and submitted the Request to the Springfield Housing Authority. The Request included a proposed monthly rental amount of $650 for Defendant's lease of the dwelling unit to Relator. The Springfield Housing Authority determined that the reasonable rent amount for the dwelling unit was $370 rather than $650. Despite the lower reasonable rent determination, Defendant agreed to rent the dwelling unit to Relator through the Voucher Program.

On or about June 19, 2008, Defendant and the Springfield Housing Authority's Voucher Program duly executed a Housing Assistance Payments Contract (the "Contract") identifying Relator as the tenant of the dwelling unit for an initial lease term beginning on June 10, 2008 and ending May 31, 2009. The Contract set the total reasonable monthly rent amount at $370. During the twelve-month lease term, the

Voucher Program paid Defendant the $370 amount eleven times. The other month, February of 2009, the Voucher Program paid $159 and Relator paid the remaining $211. From June 1, 2008 until May 1, 2009, the Springfield Housing Authority Voucher Program made a total of $4,229.00 in Housing Assistance Payments to Defendant pursuant to the Contract. *See* Director of Springfield Housing Authority Section 8 Debra Hereford Affidavit, d/e 22–5 at 1–2. The Housing Assistance Payments were made contingent upon Defendant complying with the terms of the Contract. *See* Director of Springfield Housing Authority Section 8 Debra Hereford Affidavit, d/e 22–5 at 2 ("Springfield Housing Authority's housing assistance payments were contingent on Ms. Peters staying true to the HAP Contract.").

Part B the Contract states that Defendant could not charge Relator rent above the $370 per month amount and that Defendant was required to file any residential lease between Relator and Defendant or revisions to any lease with the public housing agency:

Part B of HAP Contract: Body of Contract

\* \* \* \*

6. Rent to Owner: Reasonable Rent

a. During the HAP contract term, the rent to owner may at no time exceed the reasonable rent for the contract unit as most recently determined or predetermined by the [public housing agency] in accordance with HUD requirements.

\* \* \* \*

d. During the HAP contract term, the rent to owner may not exceed rent charged by the owner for comparable unassisted units in the premises. The owner must give the [public housing agency] any information requested by the [public housing agen-

cy] on rents charged by the owner for other units in the premises or elsewhere.

\* \* \* \*

8. Owner Certification

During the term of this contract, the owner certifies that:

\* \* \* \*

b. The contract unit is leased to the tenant. The lease includes the tenancy addendum (Part C of the HAP contract), and is in accordance with the HAP contract and program requirements. The owner has provided the lease to the [public housing agency], including any revisions of the lease.

c. The rent to owner does not exceed rents charged by the owner for rental of comparable unassisted units in the premises.

d. Except for the rent to owner, the owner has not received and will not receive any payments or other consideration (from the family, the [public housing agency], HUD, or any other public or private source) for rental of the contract unit during the HAP contract term.

*See* HAP Contract, d/e 22–1 at 19–22.

Like Part B, Part C of the Contract, entitled the Tenancy Addendum, required Defendant to provide the Springfield Housing Authority with a copy of any residential lease or revisions to the residential lease. Part C also states that Defendant could not charge rent above the monthly amount set by the Voucher Program:

Part C of HAP Contract: Tenancy Addendum

\* \* \* \*

2. Lease

a. The owner has given the [public housing agency] a copy of the lease, including any revisions agreed to by the owner and the tenant. The owner certifies that the terms of the lease are in accordance with all provisions of the HAP contract and that the lease includes the tenancy addendum.

\* \* \* \*

4. Rent to Owner

a. The initial rent to owner may not exceed the amount approved by the [public housing agency] in accordance with HUD requirements.

\* \* \* \*

5. Family Payment to Owner

\* \* \* \*

e. The owner may not charge or accept, from the family or from any other source, any payment for rent of the unit in addition to the rent to owner. Rent to owner includes all housing services, maintenance, utilities and appliances to be provided and paid by the owner in accordance with the lease.

f. The owner must immediately return any excess rent payment to the tenant.

6. Other Fees and Charges

\* \* \* \*

b. The owner may not charge the tenant extra amounts for items customarily included in rent to owner in the locality, or provided at no additional cost to unsubsidized tenants in the premises.

\* \* \* \*

15. Changes in Lease or Rent

a. The tenant and the owner may not make any change in the tenancy addendum. However, if the tenant and the owner agree to any other changes in the lease, such changes must be in writing, and the owner must immediately give the [public housing agency] a copy of such changes. The lease, including any changes, must be in accordance with the requirements of the tenancy addendum.

*See* HAP Contract, d/e 22–1 at 23–26.

**B. Defendant and Relator Executed a Separate Agreement Whereby Relator Paid Defendant $280 Per Month for Use of a Washer, Dryer, and Storage Shed on the Dwelling Unit Premises**

In June 2008 and around the same time that Defendant and the Springfield Housing Authority had executed the Contract, Relator and Defendant entered into a residential lease agreement. By the terms of the Contract, the lease agreement incorporated Part C of the Contract, known as the Tenancy Addendum.

Also in June of 2008, Defendant and Relator entered into an agreement whereby Relator paid Defendant $280 per month for Relator's use of a washer, dryer, and storage shed on the dwelling unit premises. From June 1, 2008 until May 1, 2009, Relator paid Defendant a total of $2,480 above the $370 per month reasonable rent amounts that Defendant also collected. *See* Receipts, d/e 22–1 at 41–46. These payments were made in nine out of the twelve months that Defendant also received $370 monthly rent payments from Relator and the Springfield Housing Authority's Section 8 Voucher Program. The Springfield Housing Authority has a record of the residential lease agreement but no record of the agreement for Relator to pay Defendant for use of a washer, dryer, and storage shed. *See* Director of Springfield Housing Authority Section 8 Debra Hereford Affidavit, d/e 22–5 at 2.

## C. Relator Argues that Defendant Committed Fraud on the United States By Charging Rent Above the Reasonable Amount Set By the Voucher Program

On February 4, 2013, Relator, on behalf of the United States of America, filed her One–Count First Amended Complaint (d/e 11). The Complaint alleges that Defendant violated the False Claims Act by misrepresenting the amount of rent she was collecting from Relator, whose rent was being subsidized by the Department pursuant to the Section 8 Voucher Program. Relator asserts that Defendant collected rent above the amount permitted under the Section 8 Voucher Program by charging Relator a total of $2,480 for use of a washer, dryer, and storage shed on the dwelling unit premises.

On July 31, 2013, Relator filed her Motion for Summary Judgment. In the Motion, Relator asserts that the undisputed facts establish that Defendant is liable under the False Claims Act. Relator seeks an order finding Defendant liable to the United States for damages in the amount of $10,467.00 and penalties of $49,500.00 for a total of $59,967.00. Relator also seeks her attorney's fees, costs, and expenses for bringing the lawsuit plus at least 25% but not more than 30% of the damages and civil penalties amount.

On October 14, 2013, Defendant filed a Response to Relator's Motion. On that same day, Defendant also filed a Cross–Motion for Summary Judgment. Defendant seeks an order denying Relator's Motion and granting Defendant's Cross–Motion for Summary Judgment.

## IV. ANALYSIS

In the Cross–Motion, Defendant argues that Relator waived her right to bring the instant cause of action. Defendant then argues that the undisputed facts show that Defendant did not knowingly charge rent above the $370 per month amount set by the Voucher Program. Relator, on the other hand, argues that she did not waive bringing this claim and that the undisputed facts establish that Defendant is liable for knowingly collecting excess rent.

## A. Relator Has Not Waived Her Right to Bring this Cause of Action Under the False Claims Act

■ Defendant argues first that Relator has waived her right to bring this False Claims Act action on behalf of the United States. In support of this argument, Defendant relies on a provision in Part B of the Contract that expressly prohibits a Section 8 tenant from bringing a private cause of action to enforce any provision of Part B. *See* HAP Contract, d/e 22–1 at 21 ("The family may not enforce any provision of Part B, and may not exercise any right or remedy against the owner or public housing agency under Part B.").

However, in this case, Relator is not pursuing a private cause of action to enforce the terms of the Contract. Instead, Relator is pursuing the instant claim on behalf of the United States under the False Claims Act's provision that permits such suits where a landlord knowingly charges rent above the reasonable amount set by the Voucher Program. *See, e.g., U.S. ex rel. Wade v. DBS Investments, LLC,* 2012 WL 3759015, at *5 (S.D.Fla. 2012) (finding liability under False Claims Act where defendant landlord had collected rent from a Section 8 tenant that exceeded the reasonable rental amount set by the public housing agency); *U.S. ex rel. Sutton v. Reynolds,* 564 F.Supp.2d 1183, 1189 (D.Or.2007) (finding genuine issue of fact in case brought under the False Claims Act by Section 8 tenants on behalf of the United States where the Section 8 tenants alleged that the defendant land-

lord had collected excess rent in violation of the terms in the housing assistance payments contract); *see also* 31 U.S.C. § 3730(b). Accordingly, Relator has not waived her right to bring this cause of action pursuant to the False Claims Act.

## B. The Undisputed Facts Demonstrate that Defendant Knowingly Collected Excess Rent from Relator for Relator's Use of a Storage Shed on the Dwelling Unit Premises

█ As stated, a private individual may bring an action on behalf of the United States under the False Claims Act. *See* 31 U.S.C. § 3730(b). Liability under the False Claims Act attaches when one knowingly presents to the United States, or causes to be presented, a false or fraudulent claim for payment or approval, or knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim. *See* 31 U.S.C. § 3729(a)(1)(A)-(B). In Voucher Program cases, a landlord is liable under the False Claims Act if the landlord knowingly charges rent in excess of the reasonable amount set by the Voucher Program, and the landlord's conduct results in the Government making unwarranted payments to the landlord. *See U.S. ex rel. Wade,* 2012 WL 3759015, at *3 (citing *United States ex rel. Sutton,* 564 F.Supp.2d at 1187).

Here, the Springfield Housing Authority made Housing Assistance Payments to Defendant contingent upon Defendant's compliance with the terms of the Contract. The Contract contains provisions that prohibit Defendant from collecting rent above the $370 reasonable monthly rent amount set pursuant to the Voucher Program. If Defendant knowingly collected excess rent, then Defendant improperly received Housing Assistance Payments from the Government. Accordingly, the issues in dispute

are whether payments made to Defendant by Relator constitute excess rent, and, if so, whether Defendant accepted excess rent knowingly.

### 1. Defendant Collected Payments from Relator Totaling $2,480 that Constitute Excess Rent for Relator's Use of the Premises

█ On the issue of whether Defendant collected excess rent, Defendant contends that she did not and that her conduct was completely permissible under the terms of the Contract. Specifically, Defendant contends that she was not required to provide Relator with the use of a washer, dryer, or storage shed under the Contract or the residential lease agreement. Even though these amenities are not required under the Contract or lease agreement, Defendant provides these amenities as an option for Section 8 tenants and charges a separate fee pursuant to an independent agreement. Defendant asserts that the Contract does not prohibit such agreements as long as the additional fees do not constitute excess rent.

Whether the additional fees constitute excess rent must be determined by looking at the language of the Contract. Relevant to this inquiry is the language in Parts B and C of the Contract that prohibited Defendant from charging Relator excess rent for use of the premises at 949 Indiana:

Part B of HAP Contract: Body of Contract

\* \* \* \*

6. Rent to Owner: Reasonable Rent

d. During the HAP contract term, the rent to owner may not exceed rent charged by the owner for comparable unassisted units in the premises. The owner must give the [public housing agency] any information requested by the [public housing agency] on rents charged by the owner

for other units in the premises or elsewhere.

8. Owner Certification

During the term of this contract, the owner certifies that:

* * * *

c. The rent to owner does not exceed rents charged by the owner for rental of comparable unassisted units in the premises.

* * * *

Part C of HAP Contract: Tenancy Addendum

* * * *

5. Family Payment to Owner

* * * *

e. The owner may not charge or accept, from the family or from any other source, any payment for rent of the unit in addition to the rent to owner. Rent to owner includes all housing services, maintenance, utilities and appliances to be provided and paid by the owner in accordance with the lease.

5. Other Fees and Charges

* * * *

c. The owner may not charge the tenant extra amounts for items customarily included in rent to owner in the locality, or provided at no additional cost to unsubsidized tenants in the premises.

*See* HAP Contract, d/e 22–1 at 19–26.

The language in Parts B and C of the Contract expressly prohibited Defendant from collecting payments above $370 per month for Relator's use of the premises at 949 Indiana. However, the undisputed facts establish that Defendant accepted payments from Relator during nine months of the twelve-month lease period for Realtor's use of a storage shed that was part of the dwelling unit premises. These payments totaled $2,480 and clearly constitute rent payments made by Relator to Defendant in excess of the $370 reasonable monthly rental amount for Relator's use of the premises.

Also at issue is whether Defendant's charging extra for use of the washer and dryer was permissible under the Contract. However, the Court need not address this issue because the undisputed facts demonstrate that Relator's payments for use of the storage shed on the premises clearly violated the terms of the Contract.

### 2. Defendant Knowingly Collected Excess Rent from Relator During Relator's Tenancy at 949 Indiana

■ The issue then is whether Defendant collected the excess rent amount knowingly. Under the False Claims Act, a defendant is liable if she has actual knowledge that she was charging excess rent, acted in deliberate ignorance of the truth or falsity of the fact that she was charging excess rent, or acted in reckless disregard of the truth or falsity of the fact that she was charging excess rent. *See* 31 U.S.C. § 3729(b). Showing that an individual knew of her fraudulent conduct or acted knowingly does not require proof of specific intent to defraud. *Id.*

Relator argues that the undisputed facts demonstrate that Defendant knew that she was committing fraud on the United States by collecting excess rent. Relator notes that Defendant accepted a total of $2,480 in payments from Relator for the use of a storage shed on the dwelling unit premises. Defendant accepted these payments after entering into a separate agreement with Relator. The Contract required that all residential leases and changes in lease terms executed between Relator and Defendant be filed with the Springfield Housing Authority. However, the Springfield Housing Authority has no record of the

agreement involving Relator's payments to Defendant. *See* Director of Springfield Housing Authority Section 8 Debra Hereford Affidavit, d/e 22–5 at 2.

Relator also notes that, before she began renting the dwelling unit, Relator and Defendant executed a Request for Tenancy Approval. In the Request, the parties proposed a reasonable monthly rental amount of $650. However, the Springfield Housing Authority determined that $370 constituted the reasonable monthly rent amount. After agreeing to rent the dwelling to Relator at the lower rent amount of $370 per month, Defendant and Relator agreed that Relator would pay $280 per month for use of a washer, dryer, and shed on the dwelling unit premises. The $280 amount is equal to the difference between the $650 rent amount sought by Defendant and the $370 reasonable rent amount set by the Voucher Program. This fact along with Defendant's failure to notify the Housing Authority about the payments at the very least shows deliberate ignorance or reckless disregard of the truth or falsity of the fact that these additional monthly payments constituted excess rent.

Defendant argues that she did not intentionally defraud the United States because she thought that the Springfield Housing Authority permitted agreements like the one between Relator and Defendant. Defendant also argues that any error on her part was a result of her misinterpreting the Contract.

However, for liability to attach under the False Claims Act, the complaining party need not show specific intent to defraud. Instead, the undisputed facts need only show Defendant's deliberate ignorance or reckless disregard to the truth or falsity of the validity of Relator and Defendant's agreement under the Contract. *See* 31 U.S.C. § 3729(b). As stated, Defendant's failure to inform herself about the propri-

ety of her agreement with Relator and Defendant's failure to inform the Springfield Housing Authority about the agreement demonstrate the type of deliberate ignorance or reckless disregard that support a finding of liability under the False Claims Act.

## C. Defendant Is Liable for Damages and Civil Penalties Totaling $12,940

■ Because Defendant is liable under the False Claims Act, the next step is to determine the total damages and civil penalties owed as a result of her conduct. A person who violates the False Claims Act is liable for a civil penalty of not less than $5,500 and not more than $11,000 for each violation of the Act plus three times the amount of damages the Government sustained as a result of the liable person's conduct. *See* 31 U.S.C. § 3729(a). Under the False Claims Act, the responsible party must also pay the relator's attorney's fees, expenses, and costs for bringing the case. *See* 31 U.S.C. § 3730(d)(2).

Courts generally determine the damages amount in an excess rent case by trebling the excess rent amount paid by the tenant. *See U.S. ex rel. Wade,* 2012 WL 3759015, at *5 (determining total damages amount by trebling $4,398 amount that Defendant received as additional rent from tenant); *U.S. ex rel. Stearns v. Lane,* 2010 WL 3702538, at *4 (D.Vt.2010) (determining total damages amount by adding the twelve excess rent payments of $69 received by Defendant and trebling that amount); *Coleman v. Hernandez,* 490 F.Supp.2d 278, 282–83 (D.Conn.2007) (determining total damages amount by adding the six excess rent payments of $60 received by Defendant and trebling that amount). Here, Defendant collected $2,480 from Relator in excess rent. When trebled, the total damages amount equals $7,440.

■ Additionally, Defendant received excess rent payments from Relator in nine out of the twelve months that Defendant also received the reasonable rent amount from Relator and the Springfield Housing Authority's Voucher Program. Relator argues that this constitutes nine separate violations of the False Claims Act and should result in nine separate $5,500 penalties being assessed against Defendant.

However, Defendant engaged in a single act of promising the Springfield Housing Authority that she would not charge more than $370 per month. This act serves as the basis for Defendant's liability in this case. Accordingly, Defendant is responsible for this single, fraudulent act and must pay a $5,500 penalty for her conduct.

■ The total amount in damages and civil penalties due by Defendant is $12,940 which includes the trebled damages total of $7,440 and the $5,500 civil penalty. Generally, in a qui tam action such as this, these amounts are awarded to the Government and relator.

However, the Southern District of Illinois, in a citizen suit brought pursuant to the Clean Air Act, has ordered payment of a penalties and damages award to a non-party, Habitat for Humanity. The Seventh Circuit affirmed this order. *Sierra Club v. Franklin County Power of Illinois, LLC,* 670 F.Supp.2d 825, 832–33 (S.D.Ill. 2009), *aff'd* 655 F.3d 699 (7th Cir.2011). In that case, the Southern District of Illinois reasoned that payment of the amounts to Habitat for Humanity for use in its Better Built Program furthered the building of efficient homes, and, therefore, furthered the purposes of the Clean Air Act. *Id.*

In this case, the Land of Lincoln Legal Assistance Foundation has demonstrated an unwavering dedication to Relator and the cause of preventing fraud on the Government in the Section 8 housing setting. Based on the Land of Lincoln's commit-

ment to this cause, awarding the penalties and damages to the Land of Lincoln Legal Assistance Foundation furthers the False Claims Act's purpose of identifying and preventing fraud on the Government. Accordingly, damages and penalties are awarded to the Land of Lincoln Legal Assistance Foundation in the amount of $12,940. Furthermore, Relator shall submit any request for attorney's fees within 14 days and a bill of costs and an accounting of expenses within 30 days after entry of judgment. If awarded, these amounts will also go to Land of Lincoln.

## V. CONCLUSION

The Court GRANTS Relator's Motion for Summary Judgment (d/e 22) and DENIES Defendant's Cross–Motion for Summary Judgment (d/e 35). Defendant is liable under the False Claims Act for damages and civil penalties in the amount of $12,940. This amount is awarded to the Land of Lincoln Legal Assistance Foundation, Inc. Relator shall file any request for attorney's fees no later than 14 days after the entry of judgment and the bill of costs and an accounting of expenses no later than 30 days after entry of judgment. If awarded, attorney's fees, costs, and expenses will also go to Land of Lincoln. THIS CASE IS CLOSED. IT IS SO ORDERED.