TATEL, Circuit Judge:
This is a motion for fees and costs under section 307(f) of the Clean Air Act, which authorizes courts to “award costs of litigation (including reasonable attorney and expert witness fees) whenever [they] determine[] that such award is appropriate.” 42 U.S.C. § 7607(f). In the underlying litigation, movants, a group of Native American tribes and tribal associations, intervened on behalf of petitioners who were challenging EPA rules regulating mercury emissions from power plants. See New Jersey v. EPA, 517 F.3d 574 (D.C.Cir.2008). The Tribes also filed a petition for review challenging an ancillary regulation not at issue here. We vacated the mercury rules because we agreed with petitioners that the rules violated the Clean Air Act. Id. Petitioners sought fees, and EPA agreed to pay. EPA’s Fees Br. 1.
Tribal Intervenors, who also pressed for vacatur, albeit on the basis of different arguments that we never reached, now ask us to order EPA to pay their fees and costs. EPA objects, claiming that Tribal Intervenors are ineligible for fee shifting. EPA also argues that even were Tribal Intervenors eligible, the size of their fee request is unreasonable and should be reduced by more than two-thirds. For the reasons explained below, we conclude that Tribal Intervenors merit a fee award. We decline, however, to weigh in now on the appropriate amount; instead, we direct the parties to our Appellate Mediation Program.
I.
In support of its argument that Tribal Intervenors are ineligible for fees, EPA relies on two cases, Donnell v. United States and Alabama Power Co. v. Gorsuch, in which we limited intervenor fee recovery to circumstances where intervenors had influenced the outcome of the *1281 litigation. But these two cases have no applicability here because intervenors in those cases had entered the litigation on behalf of the government — a fact essential to the disposition in both cases. See Donnell v. United States, 682 F.2d 240, 248 (D.C.Cir.1982) (holding that fees should not be awarded under the Voting Rights Act fee-shifting provision where an intervenor entering the litigation on behalf of the Justice Department contributes “nothing of substance in producing th[e] outcome” of the litigation); Alabama Power Co. v. Gorsuch, 672 F.2d 1, 4 (D.C.Cir.1982) (per curiam) (rejecting fee request under Clean Air Act section 307(f) because “[i]f ever an intervenor can recover attorneys’ fees from a party on whose side it participated,” it must at least make a “unique contribution ... to the strength of that party’s legal position”). In Donnell, we explained that when a party has intervened on behalf of the government, the fee-shifting provision’s “objective is far less compelling”: “when the Justice Department defends a suit ... it is acting on behalf of those whose rights are affected.” 682 F.2d at 246. Because “[w]e will not lightly infer that the Justice Department has violated this statutory obligation,” id. at 247, the protection of intervenors’ interests in such cases normally requires no intervention — and thus no fee shifting to incentivize intervention.
This case is very different. Here, the Tribes intervened on the side of petitioners, not the government, and they offered two substantial arguments based on EPA’s alleged failure to consider intervenors’ treaty rights, arguments that petitioners lacked standing to make. True, we never reached the Tribes’ arguments, but that is immaterial. By giving us alternative bases for resolving the case — bases petitioners were unable to offer — Tribal Intervenors contributed to the “ ‘proper implementation and administration of the act or otherwise serve[d] the public interest.’ ” Sierra Club v. EPA 322 F.3d 718, 722 (D.C.Cir.2003) (quoting Ruckelshaus v. Sierra Club, 463 U.S. 680, 687, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983)). Indeed, if petitioners had been able to make the Tribes’ arguments, the fact that we never reached them would provide “no basis for reducing the[ir] fee.” Kennecott Corp. v. EPA 804 F.2d 763, 766 (D.C.Cir.1986) (per curiam); see also Hensley v. Eckerhart, 461 U.S. 424, 435, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (explaining that “[ljitigants in good faith may raise alternative legal grounds for a desired outcome, and the court’s ... failure to reach certain grounds is not a sufficient reason for reducing a fee”); Am. Petroleum Inst. v. EPA 72 F.3d 907, 911 (D.C.Cir.1996) (awarding fees to petitioners for all arguments supporting “the invalidity of the regulation at issue” where the court reached only one of the five arguments).
EPA’s view, embraced by the dissent— that we should allow fee shifting only where an intervenor affected the outcome of a case as determined after the fact— would discourage interventions that play a useful role. “It is usually impossible to determine in advance of trial which issues will be reached or which parties will play pivotal roles in the course of the litigation. To retrospectively deny attorney’s fees because an issue is not considered or because a party’s participation proves unnecessary would have the effect of discouraging the intervention of what in future cases may be essential parties.” Seattle Sch. Dist. No. 1 v. Washington, 633 F.2d 1338, 1349 (9th Cir.1980), aff'd on other grounds, 458 U.S. 457, 102 S.Ct. 3187, 73 L.Ed.2d 896 (1982); see also Am. Petroleum Inst., 72 F.3d at 912 (“It is not necessary that a fee-petitioning client and its attorney have acted with the 20/20 acuity of hindsight in *1282 developing their arguments in order to collect attorneys’ fees.”).
Of course, while ineentivizing interventions that contribute to the proper administration of the Act, we want to be sure that we are not simultaneously encouraging fee-seeking interventions. But we believe that courts have all the tools they need to prevent that from happening. First, to intervene a party must have standing in its own right, see Military Toxics Project v. EPA, 146 F.3d 948, 953 (D.C.Cir.1998), and thus be able to file directly as petitioner. Fee seekers who have standing can already file their own suits, so our decision, at most, encourages them to participate as intervenors rather than as petitioners. See Massachusetts v. Microsoft Corp., 373 F.3d 1199, 1235 (D.C.Cir.2004) (“[E]fficiency gains ... ordinarily make intervention worthwhile when there are common issues[.]”); see also King v. Ill. State Bd. of Elections, 410 F.3d 404, 421 (7th Cir.2005) (“[Awarding attorneys’ fees to the intervenors promotes judicial efficiency. Parties ... should be encouraged to intervene in suits such as this one, rather than bringing their own claims in subsequent suits.”). Second, once in the litigation, intervenors may recover fees only insofar as they avoid wasteful duplication of effort. As we have said about awards of costs .pursuant to Federal Rule of Appellate Procedure 39, “insofar as [intervenors’] briefs duplicate what is presented by” the party on whose behalf they have intervened, their “costs are essentially for their own account, a kind of extra insurance for which they pay the premium.” Am. Pub. Gas Ass’n v. FERC, 587 F.2d 1089, 1099 (D.C.Cir.1978). The same applies in the fee-shifting context, as other circuits have held. See, e.g., Shaw v. Hunt, 154 F.3d 161, 168 (4th Cir.1998) (“Courts should certainly deny fees to meddlesome or officious intervenors whose services have been counterproductive or have, at most, been duplicative of work better left to plaintiffs counsel.”). Thus, intervenors who offer duplicative arguments in violation of our circuit rules, Handbook of Practice and Internal Procedures of the United States Court of Appeals for the District of Columbia Circuit 37 (2011), may not recover for those efforts. Here, intervenors wasted no time duplicating petitioners’ arguments. EPA’s Fees Br. 6. Instead, they focused on arguments petitioners did not and could not make. In our view, their contribution is precisely the type section 307(f) seeks to incentivize. Third, our case law protects against wasteful litigation by barring recovery of fees for arguments not reached where those arguments are frivolous, and so, from the outset, added nothing. Am. Petroleum Inst., 72 F.3d at 912 (“[S]ome issue might be so frivolous that all time spent on it was unreasonable[.]”). In this case, EPA never claims that Tribal Intervenors’ arguments were frivolous. Nor could it, for Tribal Intervenors raised weighty issues with which EPA vigorously engaged. See EPA’s Merits Br. 68-80, 86-98. Finally, under Clean Air Act section 307(f), courts retain broad authority to deny fees when they deem them not “appropriate” — authority courts can exercise in a way that ensures that intervenors get fees only where, aside from its impact on the litigation’s outcome, intervention assists the judicial process.
II.
The dissent argues that Tribal Intervenors’ challenge was “based on a different claim for relief.” Dissenting Op. at 1287. The dissent is mistaken. Petitioners challenged two regulations, the Delisting Rule, 70 Fed.Reg. 15,994 (Mar. 29, 2005), and the Clean Air Mercury Rule, 70 Fed.Reg. 28,606 (May 18, 2005), claiming that both violated Clean Air Act section 112. In *1283 support, they argued that the regulations ran afoul of the statute’s plain language and were arbitrary and capricious. Tribal Intervenors challenged the exact same regulations, arguing that they violated the exact same section of the exact same statute. Embracing (but not repeating) petitioners’ arguments, they added their • own — that the regulations violated the statute’s plain language and were arbitrary and capricious because of their effect on tribal fishing rights. If accepted, their arguments would have produced the exact same relief that petitioners sought, i.e., vacatur of the regulations. See Tribal Merits Br. 44 (“Tribal [Movants] ask that this Court: (1) vacate the section 112(n) Revision Rule; (2) vacate the Clean Air Mercury Rule[.]”). ■
Under American Petroleum, these arguments are all in support of a single claim. There, petitioners challenged EPA regulations on five separate grounds. Am. Petroleum Inst., 72 F.3d at 911. Much like the parties here, they argued that EPA violated the Clean Air Act, failed to consider certain environmental impacts, and acted arbitrarily and capriciously. See Am. Petroleum Inst., 52 F.3d 1113, 1116 (D.C.Cir.1995). In the end, we reached only one of their arguments, invalidating the regulations under the statute’s plain meaning. Am. Petroleum Inst., 72 F.3d at 911. Rejecting EPA’s contention that the non-dispositive arguments were in fact distinct claims, we explained: “Petitioners did not raise any claims distinct and separate from the one on which they prevailed. They pursued only one claim for relief— the invalidity of the regulation at issue. They argued five defensible bases for that invalidity.” Id. That is precisely the case here. Petitioners and Tribal Intervenors “pursued only one claim for relief — the invalidity of the regulation at issue,” id. And, as in American Petroleum, they offered several “defensible bases for that invalidity,” id.
According to the dissent, “[i]t is difficult to see how an argument is especially helpful ... when it in no way contributes to the resolution of a case.” Dissenting Op. at 1287 (internal quotation marks omitted). But our case law is to the contrary. In American Petroleum, we awarded fees for each argument not reached, including the narrowest, finding that none was “so frivolous that all time spent on it was unreasonable.” 72 F.3d at 912. In doing so, we recognized that alternative arguments, though ultimately not dispositive, may nonetheless be helpful to the judicial process and thus to “the proper implementation and interpretation of the Act.” Id. at 911. In Alabama Power, we even awarded fees for an argument petitioners withdrew because “had it remained in the case, [the argument’s] resolution would have contributed importantly to the administration of the Act.” 672 F.2d at 4-5 & n. 18. “[W]e will not use hindsight to deny an otherwise appropriate recovery.” Id at 5 n. 18. Indeed, “narrow” arguments of the kind belittled by the dissent, Dissenting Op. at 1287, can be especially helpful, offering the court a basis for a disposition that makes as little law as possible, best preserves agency discretion, or otherwise promotes the purposes of the Clean Air Act. We cannot imagine why we would want to discourage that kind of assistance by drawing an arbitrary line between petitioners and intervenors.
Here, had we not disposed of the case on the basis of petitioners’ contentions, the Tribes’ arguments, which sought to force EPA to comply with its Clean Air Act obligations, would, like petitioners’ withdrawn arguments in Alabama Power, have “contributed importantly to the administration of the Act,” 672 F.2d at 5 n. 18. And rather than summarily dismissing *1284 these supposedly “anemic” arguments, Dissenting Op. at 1285, EPA devoted twenty-four pages of its brief responding to them. EPA’s Merits Br. 86-98 (Part IV, arguing entirely that “EPA Properly Considered Tribal Treaties in the Section 112(n) Rule”); id. at 68-80 (defending itself against “Tribal Petitioners^] contention] that EPA’s freshwater health hazard assessment” is arbitrary and capricious). Only by measuring Tribal Intervenors’ contribution against our ultimate decision — a measure we have rejected for evaluating a petitioner’s eligibility for fees — could one discount the significant role they played in this litigation.
Further attempting to marginalize Tribal Intervenors’ contribution, the dissent criticizes them for “br[inging] a narrow, fact-based challenge to an ancillary regulation,” unlikely to. “play a critical role in this case.” Dissenting Op. at 1287. But this conflates the Tribes’ role as intervenors, in which they challenged the Delisting and Mercury Rules, and their role as petitioners, in which they challenged a thud regulation, the ancillary Reconsideration Rule. Tribal Intervenors seek no fees for the latter. They seek fees only with respect to the vacatur of the Delisting and Mercury Rules — the regulations lying at the very heart of this case. See Tribal Fees Br. 3-4.
The dissent claims that today’s decision takes an “extraordinary step.” Dissenting Op. at 1284. Again, the dissent is mistaken. Other courts have awarded fees in similar circumstances. For instance, the Fourth Circuit rejected an outcome-based rule (like the one urged by the dissent), awarding fees to intervenors who, though ultimately found to lack standing, had nonetheless “play[ed] an active role” in the litigation. Shaw, 154 F.3d at 163. The Ninth Circuit likewise awarded fees to intervenors whose arguments it never reached. Seattle Seh. Dist. No. 1, 633 F.2d at 1350. In that case, in which plaintiffs challenged an initiative banning race-conscious school desegregation, the district court bifurcated the litigation: Phase I would consider plaintiffs’ argument that the initiative was unconstitutional, and Phase II would consider a separate argument — made by intervenors — that the school districts were operating racially dual school systems. Id. at 1341. Because plaintiffs prevailed at trial, the court never even had to hear intervenors’ Phase II arguments. The court nonetheless awarded fees for the “substantial time and effort” intervenors spent “preparing] for trial on the Phase II issues,” declining to “retrospectively deny attorney’s fees” solely because intervenors’ participation ultimately “prove[d] unnecessary.” Id. at 1349-50.
III.
Tribal Intervenors seek a total of $305,389 in fees and costs. EPA insists that the request is excessive and should be reduced to $64,793. Rather than sorting through the parties’ competing claims, we direct the question to our Appellate Mediation Program. See, e.g., Clifton Power Corp. v. FERC, No. 94-1775 (D.C.Cir. Feb. 12, 1997) (per curiam order referring consideration of motion for attorney fees to the Appellate Mediation Division).

So ordered.