In the

# United States Court of Appeals
## For the Seventh Circuit

No. 21-3057

ANIMAL LEGAL DEFENSE FUND,

*Plaintiff-Appellant,*

*v.*

SPECIAL MEMORIES ZOO, ET AL.,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 20-C-216 — **William C. Griesbach**, *Judge.*

ARGUED JUNE 7, 2022 — DECIDED AUGUST 1, 2022

Before HAMILTON, KIRSCH, and JACKSON-AKIWUMI, *Circuit Judges.*

JACKSON-AKIWUMI, *Circuit Judge.* The sole issue in this appeal is whether the district court erroneously denied fees and costs to the Animal Legal Defense Fund after it obtained a default judgment on its claim under the Endangered Species Act. ALDF sued Special Memories Zoo and its owners and manager under the Act's citizen-suit provision, *see* 16 U.S.C. § 1540(g)(1), for mistreatment of endangered and threatened

animals at the private zoo in Greenville, Wisconsin. After about nine months defending the action, the defendants intentionally defaulted. The district court entered judgment for ALDF and permanently enjoined the defendants from possessing or exhibiting animals. The court, however, declined to award fees and costs to ALDF. Because the district court's stated reasons were insufficient to deny statutorily recoverable expenses, we remand for an award of reasonable fees and costs.

## BACKGROUND

ALDF is a nonprofit organization that advocates for the protection of animals. According to its complaint, at least one member of ALDF visited Special Memories Zoo and reported concerns about the zoo's treatment of animals. The ALDF member (plus other visitors and a former zoo employee) reported, for instance, that endangered and threatened animals such as lemurs, tigers, and lions were kept in squalid and cramped cages, had obvious injuries, lacked clean water, and showed signs of distress. At least one ALDF member also reported concerns about non-endangered or non-threatened animals, asserting that their water was rancid, their food was infested with rodents and bugs, and their enclosures were flimsy and incapable of protecting them from inclement weather or escape.

ALDF sued the zoo, its owners, Dona and Gene Wheeler, and its manager, Gretchen Crowe. (Gene Wheeler died during the proceedings and was dismissed from the suit.) ALDF alleged that the conditions of the endangered and threatened species' confinement harassed and harmed the animals, constituting an unlawful "take" under the Act. *See* 16 U.S.C.

§ 1538(a)(1)(B) (prohibited acts); § 1532(19) (defining "take"). ALDF further asserted that the conditions for the non-protected animals created a public nuisance under Wisconsin law. *See* WISC. STAT. § 823.01.

The defendants filed an answer denying the allegations. Simultaneously, their lawyer submitted a letter informing the court that they were in the process of closing the zoo and re-homing the animals:

> Last week, [Gene Wheeler] was diagnosed with leukemia.… Due to his health complications and this lawsuit, and the recognition that the ALDF will only continue to pursue claims against the Zoo even if my clients prevail in this action, my clients have made the difficult decision to rehome its animals, in particular, the endangered and threatened animals.

A couple of months later, the defendants moved to dismiss the case. The case was moot, they argued, because they had transferred their animals to third parties and were in the process of closing the zoo. The district court denied the motion. The case was not moot, it explained, because the defendants submitted no evidence that the animals had been irrevocably transferred or that their ownership interests had terminated. The court directed the parties to engage in limited discovery on this issue.

Rather than engage in discovery, the defendants asked the court to enter default judgment against them under Federal Rule of Civil Procedure 55(b)(2). They had asked ALDF to dismiss the case voluntarily because the zoo had closed, but ALDF refused unless the defendants revealed where they sent

the animals. The defendants shared the locations of the endangered and threatened animals but not the non-protected animals. They then announced that they "no longer intend[ed] to provide any discovery or continue to defend themselves in this litigation" because the cost of litigation was high, the zoo was permanently closed, and the animals had been rehomed. ALDF responded and filed its own motion for default judgment, seeking declaratory and injunctive relief.

The court entered default judgment for ALDF. It found that "the defendants did violate the [Act] and that the operation of the zoo constituted a nuisance." Based on that determination of liability, the court entered a permanent injunction barring the defendants from possessing or exhibiting animals other than their pet dogs. The court declined ALDF's request for declaratory relief as superfluous, and it denied ALDF's request for an injunction prohibiting the defendants from selling the zoo's other property, such as its cages.

ALDF then moved for attorney's fees and costs under 16 U.S.C. § 1540(g)(4), which permits the prevailing party's recovery of these expenses when "appropriate." The court denied the motion, explaining that an award was unwarranted for four reasons: (1) The court had granted ALDF some relief "despite serious questions that remained concerning ALDF's Article III standing and whether the case had become moot" so that it could "dispose of the case without requiring the expenditure of additional time and resources to resolve threshold issues … that Defendants ultimately had no interest or desire to contest"; (2) ALDF did not contribute substantially to the outcome of the case; rather, the zoo closed because of Mr. Wheeler's illness; (3) The litigation arguably did not advance the goals of the Act, which does not exist to close

private zoos; and (4) ALDF is "not dependent upon fee awards." The court did not address costs ($2,459.56) as distinct from the attorney's fees ($69,713).

## ANALYSIS

On appeal, ALDF challenges the district court's decision to deny fees and costs under the Endangered Species Act's fee-shifting provision. The provision states, in relevant part, that when a court grants relief in a citizen suit, it "may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate." 16 U.S.C. § 1540(g)(4). To award fees and costs under a "when-appropriate" provision like this one, a district court must make two findings. First, it must find that the fee applicant achieved "some success" in the litigation. *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 682 n.1, 691–93 (1983) (explaining that "when-appropriate" fee arrangements, including the Act's, require that "some success on the merits be obtained before a party becomes eligible for a fee award"). Second, the court must find that an award is "appropriate." § 1540(g)(4).[1]

There is no dispute on appeal that ALDF won "some success" in this litigation, making it eligible for fees under the "when-appropriate" fee arrangement. ALDF obtained a judgment on its federal and state claims and a permanent

---

[1] "When-appropriate" fee arrangements authorize a fee award in some circumstances where a "prevailing party" statute would not, as when a lawsuit serves as a "catalyst" for a defendant's altered course of action without a court award of relief. *See Ruckelshaus*, 463 U.S. at 686–88; *Loggerhead Turtle v. County Council of Volusia County*, 307 F.3d 1318, 1325–27 (11th Cir. 2002).

injunction. It thus achieved all the relief possible under the Act, which provides only for equitable relief, and the only kind of remedy it requested, having not sought damages on the nuisance claim. Indeed, ALDF even satisfied the more demanding standard of "prevailing party" fee statutes because the court actually entered judgment in its favor. The parties focus their arguments on whether the court erroneously concluded that fees and costs were not "appropriate."

I.      **Whether "special circumstances" were required to deny an award of attorney's fees**

We have not yet articulated a clear standard for when attorney's fees are "appropriate" under fee-shifting provisions like the one in the Act, and the parties debate what standard should apply. On the one hand, ALDF urges this court to adopt the approach of the Ninth Circuit in *St. John's Organic Farm v. Gem Cnty. Mosquito Abatement District*, 574 F.3d 1054 (9th Cir. 2009), and hold that a litigant who achieves "some success" under the Act is entitled to fees absent special circumstances, which are rare. *See also Kuehl v. Sellner*, 887 F.3d 845, 855 (8th Cir. 2018) (holding same); *Pound v. Airosol Co.*, 498 F.3d 1089, 1103 (10th Cir. 2007) (same, in context of Clean Air Act). The defendants, on the other hand, maintain that there is no presumption of entitlement to fees and that courts have wide discretion to deny them when, as they contend here, the judgment was "pyrrhic" and the litigation did not cause the change in conduct.

For two reasons, we conclude that reasonable fees are presumptively appropriate when a citizen-litigant wins some success under the Act, unless circumstances make the award unjust.

First, adopting this standard aligns with the purpose of "when-appropriate" fee arrangements, which are intended to "expand the class of parties eligible for fee awards" and "to permit awards of fees to all partially prevailing parties." *Ruckelshaus*, 463 U.S. at 688, 691. These provisions were designed to broadly allow fees because, with no damages available, they are the sole monetary incentive for citizens to bring claims. *See* 16 U.S.C. § 1540(g). Further, any injunction is not primarily for the plaintiffs' benefit; the plaintiffs are private attorneys general and are not otherwise "in a position to advance the public interest" in federal court. *Newman v. Piggie Park Enter., Inc.*, 390 U.S. 400, 402 (1968) (discussing similar citizen-suit provision in Title II of the Civil Rights Act of 1964). Congress also recognized that "in bringing legitimate actions under this section citizens would be performing a public service" and so "courts should award costs of litigation to such party." *Pennsylvania v. Del. Valley Citizens' Council For Clean Air*, 478 U.S. 546, 560 (1986) (discussing intent of fee-shifting provision in Clean Air Act) (internal citation omitted).

Second, the Supreme Court has stated that the fee provisions of environmental statutes that promote private enforcement should be applied "in the same manner" as those in civil-rights statutes such as 42 U.S.C. § 1988 (which permits courts to award reasonable attorney's fees for actions pursued under civil-rights statutes like 42 U.S.C. § 1983 and Title IX). *Del. Valley*, 478 U.S. at 560; *Citizens for a Better Env't v. Steel Co.*, 230 F.3d 923, 931 (7th Cir. 2000) (recognizing that "the proposition that environmental fee-shifting laws should be governed by the same principles as fee-shifting under § 1988 formed the basis of the Court's disposition [in *Del. Valley*]"). This makes sense, given that § 1988, like the Act, "is a tool that

ensures the vindication of important rights, even when large sums of money are not at stake, by making attorney's fees available under a private attorney general theory." *Capps v. Drake*, 894 F.3d 802, 806 (7th Cir. 2018) (internal citation omitted).

We have held that, under such civil-rights provisions, awarding fees is the norm: The prevailing party "should ordinarily recover an attorney's fee *unless special circumstances would render such an award unjust*." *King v. Ill. State Bd. of Elections*, 410 F.3d 404, 413 (7th Cir. 2005) (emphasis added and citation omitted); *see also Piggy Park*, 390 U.S. at 402 ("[O]ne who succeeds in obtaining an injunction under [Title II] should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust."). Despite the permissive language of the statute (that is, that a court "may" award fees when appropriate), the district court's discretion is cabined: "Although the language of the fee-shifting statutes vests a district court with discretion to award attorneys' fees [in the civil-rights context], this court generally has held that prevailing civil rights plaintiffs are entitled to their attorneys' fees as a matter of course." *King*, 410 F.3d at 415 (internal quotations and citation omitted); *see also Capps*, 894 F.3d at 804 (under § 1988, denial of fees is reasonable only "if the party received only a technical, nominal, or *de minimis* damage award"). In keeping with the command to treat permissive fee-shifting provisions in public-interest statutes alike, costs and fees will ordinarily be appropriate when a plaintiff wins some success under the citizen-suit provision of the Act—unless special circumstances make the award unjust.

## II.      Whether circumstances existed to deny fees

In light of this standard, we conclude that the district court here acted outside its "narrow" discretion by denying all fees and costs to ALDF. *See King*, 410 F.3d at 424 (citing *N.Y. Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 68 (1980)). We note, however, that ALDF would prevail in this appeal even under a more deferential standard because all four reasons for denying fees were rooted in errors of law or errors of fact. *See Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (noting that "factual or legal error may alone be sufficient to establish that the court 'abused its discretion' in making its final determination"); *see also Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011) (reversing district court's fee-award decision and noting that, even when courts have wide latitude to make decisions about fee awards, it is "not unlimited latitude, and the district court still bears the responsibility of justifying its conclusions"). Here, the court's reasons were insufficient to justify denying fees, when weighed against the purpose and incentive structure of the Act.

The district court's first reason for denying an award was that, although the court granted ALDF some relief, it did so despite standing and mootness concerns. We see at least three problems with this first reason.

One, the defendants made a strategic litigation choice to default rather than pursue dismissal for mootness—and they never moved to dismiss for lack of standing. That was their right, but it was not without consequences. It would be odd if the defendants, after refusing to engage in the discovery needed to determine mootness, could rely on potential mootness to avoid fees. Nor is it fair for the court to sidestep an issue of subject matter jurisdiction yet cite jurisdictional "concerns" as a basis for denying fees. If the court had jurisdiction

to enter a judgment on the merits, then it had jurisdiction to award fees.

Two, denying fees because the losing party could have prevailed if it made different litigation choices runs counter to the principle that determining fees "should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). That is precisely what occurred here: The parties debated on appeal why ALDF prevailed and what might have happened if the defendants had participated in the litigation.

Three, the defendants' cessation of their (admitted) violations does not necessarily prevent ALDF from collecting reasonable fees: As the Supreme Court has noted, Congress intended fee awards under "when-appropriate" statutes to "extend to plaintiffs in actions which result in successful abatement" even when they "do not reach a verdict." *Ruckelshaus*, 463 U.S. at 686 n.8. A contrary rule would disincentivize citizen suits and defy Congress's intent to "afford[] endangered species the highest of priorities." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 194 (1978).

The district court's second reason for denying fees was that Mr. Wheeler's illness, not ALDF's litigation, caused the zoo's closure. ALDF protests that a fee applicant need not demonstrate causation when he is the prevailing party and his success is reduced to an enforceable judgment; in ALDF's view, an applicant needs to establish causation only when the lawsuit ends without a liability determination. In any case, ALDF argues, the district court factually erred in concluding that ALDF played "only a small role" in the defendants' decision to transfer the animals and sell the zoo.

We agree with the latter point, regardless of whether, as a general matter, a lack of causation could be a special circumstance that negates the presumption of recovering fees. The district court clearly erred in finding that ALDF did not substantially impact the decision to close the zoo. The defendants twice admitted that the lawsuit contributed to the decision. The defendants wrote in a letter to the court that Mr. Wheeler's illness "and this lawsuit" caused them to close the zoo rather than defend against the action. Later, zoo manager Crowe admitted that "due to this lawsuit, all of the [endangered and threatened] animals were gone." Despite these statements, the district court assumed that the defendants would have sold the animals regardless of the lawsuit because Mr. Wheeler, who was gravely ill, held the license to possess the animals. But there is simply no evidence that Crowe or Mrs. Wheeler could not have applied for a new license after Mr. Wheeler's death; indeed, at oral argument, the defendants' attorney admitted that they could have applied for a new license. True, at the end of the lawsuit the defendants attested that they would not apply for a new license, but they made that attestation as part of their efforts to end the lawsuit; no where do they swear that, *had the lawsuit not been brought*, they would not have applied for a license or continued operating the zoo.

Ultimately, the record shows only that, when faced with the dual hardships of Mr. Wheeler's illness and this lawsuit, the defendants decided to close the zoo. Nothing supports a finding that the illness was the primary cause and that the lawsuit played, as the district court concluded, "only a small role." In any case, the extent to which the lawsuit contributed to this outcome should have gone to the *amount* of fees, not whether to award them. *See King*, 410 F.3d at 425 n.20 (courts

may adjust "award based upon the extent to which a party's participation contributed to the ultimate remedy"). Though, as we discuss below, a significant reduction would not be appropriate in this case where the relief was complete and the causation was clear.

The district court's third reason for denying fees likewise does not withstand scrutiny. The court relied on *Kuehl v. Sellner*, 887 F.3d 845, 855–56 (8th Cir. 2018), in expressing doubt that this lawsuit advanced the goals of the Act, which it said was not designed to close private zoos. The amicus brief filed by The Calvary Group largely echoes this contention. But the Act promotes conservation of protected species, in part through a ban on "tak[ing]" animals of these species by harassing or harming them. 16 U.S.C. § 1532(19); *see also Tenn. Valley*, 437 U.S at 184 (the Act is designed to "reverse the trend toward species extinction, whatever the cost," including by instructing "[a]ll persons … not to 'take' endangered species"). Nothing in the statute allows people to harass or harm endangered animals so long as they do so on private property. In any case, ALDF had no control over the defendants' decision to close the zoo rather than comply with the Act, so that outcome should not prevent its recovery.

The district court's fourth reason for denying ALDF fees was not a permissible reason. The court speculated that ALDF did not need funding and the defendants lacked resource to pay. But a fee applicant's wealth is not a special circumstance. *Sierra Club v. Khanjee Holding (US), Inc.*, 655 F.3d 699, 708–09 (7th Cir. 2011). Nor is a losing party's. *Lenard v. Argento*, 699 F.2d 874, 899–900 (7th Cir. 1983) (citing *Entertainment Concepts, Inc. v. Maciejewski*, 631 F.2d 497 (7th Cir. 1980). We recognize that our sister circuit held the opposite in *Kuehl*, 887

F.3d at 855 n.6, concluding that a lack of resources can be a special circumstance when the lack caused the violations of the Act. That reasoning, however, is inconsistent with this circuit's long-standing precedents. And in any case, nothing in the record shows that the defendants here lacked resources to cover a fee award; the court's assumption that they could not do so was based on mere speculation.

## III.    The Amount of Fees and Costs

For these reasons, we remand for the district court to decide in the first instance what a reasonable amount would be. Under the familiar "lodestar" method, the district court should calculate the number of hours worked on the case multiplied by a reasonable hourly rate. *See Hensley*, 461 U.S. at 433; *Farrar v. Hobby*, 506 U.S. 103 (1992). This lodestar amount is presumptively reasonable, *Perdue v. Kenny A.*, 559 U.S. 542, 553–54 (2010), but the district court will have discretion to adjust the total amount awarded. *See Estate of Enoch v. Tienor*, 570 F.3d 821, 823–24 (7th Cir. 2009) (citing *Hensley*, 461 U.S. at 433). Any adjustment, however, should recognize ALDF's complete success and its clear role in contributing to the defendants' change of conduct.

Finally, we note that the parties and district court do not distinguish between fees and costs. But the denial of costs was also erroneous. Costs are presumptively awarded to the prevailing party under Federal Rule of Civil Procedure 54(d). Though the Act contains a more specific fee-shifting provision, nothing suggests that it erases the presumption of recovering the litigation costs enumerated in 28 U.S.C. § 1920. *See Lange v. City of Oconto*, 28 F.4th 825, 848–49 (7th Cir. 2022) (explaining in context of ADA that fee-shifting statutes do not necessarily impact presumption of costs).

We VACATE the decision and REMAND for the district court to award costs and reasonable fees.

KIRSCH, *Circuit Judge*, dissenting. Because the district court did not abuse its discretion in denying attorney's fees to ALDF after finding that ALDF's lawsuit played only a small role in closing Special Memories Zoo, I respectfully dissent. The majority wrongly concludes that the district court committed a clear error of fact by finding that ALDF's lawsuit did not substantially impact the outcome of the litigation. In *King*, we said that if a party's participation in a lawsuit was "so unimportant" to the outcome of the litigation, then fees may not be warranted. *King v. Illinois State Bd. of Elections*, 410 F.3d 404, 425 (7th Cir. 2005) (stating that in such cases, the party would not "deserve" fees). That's exactly what the district court found here—that ALDF "played at most only a small role" in closing the zoo, so in turn, fees were not warranted, and such a finding was well within its discretion based on the evidence in this record. See *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011) (describing the "highly deferential standard" we apply to the district court's determination of attorney's fees in suits under Title VII of the Civil Rights Act because fees disputes are "essentially … factual") (citation omitted); *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 68–70 (1980) (it is within the district court's discretion to determine whether special circumstances discourage an award, including consideration of whether the attorney "ha[d] an important role to play" in the ultimate outcome of the litigation); see also *New Jersey v. EPA*, 663 F.3d 1279, 1282 (D.C. Cir. 2011) (district courts can exercise their "broad authority to deny fees" under "when appropriate" statutes "in a way that ensures that intervenors get fees only where, aside from its impact on the litigation's outcome, intervention assists the judicial process.").

The district court concluded that ALDF did not contribute very much to the outcome (an injunction that required: (1) the defendants obey existing laws and (2) not possess animals that they repeatedly said under oath that they weren't going to possess regardless of the litigation) because the same outcome would have been achieved without the litigation. The district court's finding was supported by a mountain of facts. On March 12, 2020, exactly one month after ALDF filed suit, Gene Wheeler, 81, was diagnosed with terminal leukemia. Six days later, on March 18, the defendants sent a letter to the court regarding this substantial change in the Wheelers' circumstances. The letter described the date of Wheeler's diagnosis and his dire condition. It also said that the defendants had decided to rehome all their animals, with the hope of helping the litigation come to rapid resolution so Wheeler could focus on his health. Indeed, only one endangered animal even remained in the zoo's possession at that point, merely a month after the litigation had started, as the defendants had already made good on their commitment to rehome the others. Wheeler died later that summer, on July 29, 2020. The default judgment and injunction in January 2021 appear to have been entirely unimpactful to the zoo's function or future plans. It was not an abuse of the district court's discretion to find that the circumstances under which the zoo closed during this litigation, after Mr. Wheeler's diagnosis of leukemia and death, rendered ALDF's participation so unimportant to the ultimate outcome that awarding it fees would be unjust under the circumstances.

In finding the district court committed clear error, the majority ignores all these facts, and instead focuses on the only evidence to the contrary: two passing statements, one made by the defendants' attorney and the other taken from a longer

comment from Gretchen Crowe, that the lawsuit caused them to close the zoo. True enough, the defendants conceded in these comments that the lawsuit, along with Mr. Wheeler's illness, contributed to their decision to close the zoo (and the district court never found otherwise). But the district court justified its conclusion, see *Pickett*, 664 F.3d at 639, based on the overwhelming evidence that the defendants would have sold the animals regardless of the lawsuit. *First*, Mr. Wheeler held the only license to possess the animals. The majority claims that there was no evidence in the record that Crowe and Donna Wheeler could not have applied for a new license after Mr. Wheeler's death. But, as the majority then acknowledges, the defendants attested under oath that they would not apply for a new license and, under federal regulations, Mr. Wheeler's license was not transferrable. See 9 C.F.R. § 2.1(b)(1) (stating that licenses are held only by the specific person to which the license was issued and requiring a new license be obtained upon change of ownership, location, activities, or animals). Regardless, that was not the only evidence on which the district court relied in finding that, even had the lawsuit not been brought, the defendants would have closed the zoo. *Second*, Crowe and Mrs. Wheeler both stated under oath that they had no intention of maintaining animals, besides their own pet dogs, or operating a zoo again. Mrs. Wheeler stated that Mr. Wheeler was the "driving force behind opening the [z]oo" and that she had neither the desire nor the physical ability to re-open without him. Likewise, Crowe's affidavit said that she never intended to work at another zoo and would not work for Mrs. Wheeler now that Mr. Wheeler had passed. *Third*, the barn which was integral to the zoo's business had burned to the ground and would not be reconstructed, providing more evidence that the defendants would

not re-open a zoo. Indeed, from the onset of Mr. Wheeler's diagnosis a month into this lawsuit, the defendants maintained that their decision to close the zoo was permanent, so that Mr. Wheeler could focus on his health, and no actions taken by the defendants ever deviated from that decision.

There's more than enough evidence on which the district court could rely in deciding that the defendants would have ceased possession of the animals and closed the zoo because of Mr. Wheeler's illness, regardless of the lawsuit. Whether we would have come to the same conclusion on this record is outside the scope of our review; the district court did not abuse its discretion in relying on this evidence to find that ALDF played an unimportant role in the outcome of this case, and thus fees were not warranted.

Not only does the majority substitute its discretion for that of the district court on the issue of causation, it seems to go much farther and well beyond what is an appropriate appellate role with this sentence: "a significant reduction [in fees] would not be appropriate in this case where the relief was complete and the causation was clear." The majority fails to mention that ALDF requested a staggering amount of fees— $72,172.56—in a case in which the defendants folded without a fight a month after ALDF filed suit. This record clearly supports the district court's denial of fees and would certainly support a merely de minimis amount. In any event, the law leaves that determination to the district court.